THE ATCHISON & NEBRASKA RAILROAD COMPANY V. SUE
FLINN.

NEGLIGENCE; *Personal Injury; Inevitable Accident.* The plaintiff, a little
girl less than five years old, and another little girl about the same size, but
older, were put into one of the defendant's passenger cars, at White
Cloud, Kansas, by an aunt of the plaintiff, with the intention that they
should ride in such car to Iowa Point; and the little girls did ride in
such car, along with several passengers, from White Cloud to Iowa Point,
but without being in the care or custody of any person, without paying
any fare, or having any ticket or money with which to pay fare, and
without any intention, on their part or on the part of the plaintiff's aunt,
that they should pay fare; and neither the conductor nor any other agent
of the defendant asked them for fare; but it was a rule of the defendant
not to take fare from children of the age of the plaintiff, who were in
the custody of some older person who did pay fare, and such children
were not allowed to ride in the cars except in the custody of some older
person to take care of them; and no agent or employé of the defendant
had any knowledge that the little girls had no guardian or protector on
the train to take care of them, or that they wanted to get off the train at
Iowa Point. The train stopped at Iowa Point a sufficient length of time
for all passengers who wanted to get off, or to get on, to do so, and after
the train had started, and while it was in motion, the little girls attempted
to get off, and a man, who was a passenger on the train, assisted them;
and the little girl who accompanied the plaintiff stepped off the train in
safety, but when the plaintiff stepped off, (being assisted by said passen-
ger,) she fell, and rolled off the station platform upon the ground between
the platform and the car, and throwing her legs in front of the hind
trucks of the car, the trucks ran over her legs and crushed them. *Held,*
Under the facts of this case, which are more fully stated in the opinion,
that the railroad company is not liable for damages on account of the
accident; that no person can be held responsible for an unforeseen ac-
cident which incidentally occurs while he is in the rightful and proper
exercise of his lawful business; and further, *held,* that a new trial will be
ordered.

### *Error from Doniphan District Court.*

ACTION brought by *Sue Flinn,* an infant, by her next friend,
Martin Flinn, against the *Atchison & Nebraska Railroad Com-
pany,* to recover $25,000 damages for personal injuries. Trial
at the December Term, 1878, of the district court, when the
jury made many special findings of fact, and rendered a general
verdict for the plaintiff, and assessed her damages at $12,500.

A new trial was denied, and judgment given for the plaintiff and against the defendant, for $12,500 damages, and for costs. The *Railroad Company* brings the case here. The opinion states the facts.

*W. W. Guthrie,* for plaintiff in error:

1. The defendant in error was not a passenger. ( 8 Kas. 505; 11 id. 83–92; 13 Am. Law Reg. 665.) In street cars, children are expected to travel alone, and are charged fare; and the right to compensation existing, the duty of full protection is therefore imposed. ( 27 Mich. 503; 74 Pa. St. 421; 45 Conn. 284; 15 N. Y. 444; 22 Ill. 641.)

The plaintiff in error, as a common carrier of passengers, did not owe a duty to her as a passenger; and this action being for an injury to her as such, it was entitled to judgment. No invitation to ride was given, and its rules did not allow her to be upon the train. ( 64 Mo. 426; 13 Am. Law Reg. 665–672; 69 Pa. St. 210–214.)

2. The conduct of the aunt, Mrs. Armstrong, is the act of Sue Flinn, for the purposes of this case. ( 67 Mo. 671; 64 id. 421; 78 Ill. 88; 42 id. 174; 58 Me. 384; 8 Gray, 132; 46 Ind. 30; 29 Barb. 234–6; 21 Wend. 615; 38 N. Y. 456; 4 Allen, 287; 9 id. 401; 24 Md. 108.)

3. The act of Starr must be held to be the act of the two children. In taking charge of the defendant in error, he did what the aunt placed her in the car to have done for her; and while in his charge the mistake which was made was an error of judgment, or the result of his excitement which could not have been expected, and made it clearly a case of unavoidable accident. ( 2 Neb. 337; 56 Ind. 396.)

4. Transportation companies cannot be held liable for unreasonably unnecessary acts of their passengers, or other persons on their trains. ( 63 N. Y. 556–559; 106 Mass. 463; 116 id. 269; 107 id. 108; 23 Pa. St. 147–150; 74 id. 425.)

5. The plaintiff in error was not bound to know that Sue Flinn was on the train, and as a waif needing charity; only by extraordinary effort could such facts have been discovered,

and extraordinary care in that respect could not be required; no compensation could be exacted, and no such duty was due her. ( 8 Kas. 505–517; 14 Barb. 505–517; 56 Pa. St. 294–6; 70 id. 357; 1 Dillon Ct. Ct. 582; 37 Iowa, 264–7.)

6. It was then the clear duty of the court to have held that the facts were undisputed, that no contract or duty existed, and that the injury was produced by the act of plaintiff, and from causes over which defendant neither had, nor was bound to have, control. (58 Me. 384; 17 Kas. 558; 8 id. 519; 56 Pa. St. 297; 87 id. 405; 16 Gray, 501; 39 Md. 329–343.) Chapter 93, Laws of 1870, has no application to this case. (11 Kas. 93.)

7. This is not an action *ex contractu,* in which the injury was caused by the tortious acts of the railroad company, as in 17 Kas. 116; 51 Ga. 489; 49 N. Y. 671; 59 id. 351.

8. In the court below judgment ought to have been given for the defendant on its demurrer to the plaintiff's evidence. ( 22 Kas. 51.)

*Everest & Waggener,* for defendants in error:

1. The payment of fare was not necessary to render the plaintiff in error liable for the injury complained of. " The responsibility of a railroad company for the safety of its passengers does not depend on the kind of cars in which they are carried, or on the fact of payment of fare by the passenger. If the passenger is lawfully on the cars, the company is bound to carry him safely, whether he has paid his fare or not." (30 Ill. 9. See also 40 N. Y. 168, 171; 58 id. 126, 133; 40 Barb. 546; 18 Ill. 419; 2 Wait's Actions and Defenses, 64, and cases cited; 95 U. S. 660; Hutchinson on Carriers, §§ 537, 539, 563; Sherman and Red. on Neg., §§ 262, 263; 6 Cal. 232; 57 Pa. St. 346; 45 Conn. 298; 37 Iowa, 270; 14 How. U. S. 486; Wharton on Neg., §§ 354–6, 501; 20 Minn. 128; 125 Mass. 133; 107 id. 108, 110; 105 id. 477; 3 Lans. 107; 40 Miss. 391–394; 19 Ohio St. 12, 13; 5 Ind. 340; 12 Wall. 270; 8 Kas. 517.)

2. The defendant in error being a child of tender years, cannot be deprived of her right of action on account of any fault or negligence of Mrs. Armstrong, Minnie Dutton, or others. (18 Ohio St. 399 ; 27 Gratt. 455 ; 41 E. C. L. 422; 43 Md. 551; 84 Ill. 483; 83 id. 304; 18 id. 349; 58 id. 226 ; 41 Iowa, 71.)

3. For what reason or upon what principle it can be claimed in the case at bar that this little girl is responsible for any negligence or act of Starr, shown by the evidence, it is difficult to understand.   In 57 Pa. St. 187, 192, the doctrine contended for on behalf of plaintiff in error is fully denied. (Also, see 30 Ohio St. 451; 74 Pa. St. 421; 63 N. Y. 104; 47 id. 315; 26 id. 49; 26 Conn. 591; 27 Mich. 511; 48 Iowa, 295; Field on Damages, §§ 193, 194.)

4. The plaintiff in error insists that this is an action *ex contractu*, with none of the elements of an action *ex delicto*, that it was liable only for some omission of duty incumbent upon it in the performance of a contract of common carriage; that under the evidence the plaintiff below having failed to show an express contract, the railroad company could not be held liable for its failure to exercise even ordinary care. This position is wholly untenable. (5 Kas. 148; 17 id. 166; 11 id. 590; Hutchinson on Carriers, §§ 736–741 ; Pomeroy's Legal Remedies, 625 ; 4 Biss. Ct. Ct. 114; 11 Allen, 505.)

5. It is claimed that " the company was not bound to know that Sue Flinn was on the train, and as a waif needing charity; and that only by extraordinary effort could such facts have been discovered."   The jury found that the company, by the exercise of reasonable and ordinary diligence, could have ascertained that she was on the train, which she intended to leave at Iowa Point, and that she sat in the passenger coach, in full view of the conductor.   It is claimed that "no invitation to ride was given."   In order that a person desiring to ride shall be lawfully on the train, it is not necessary to show an *express* invitation.   The company, by holding itself out as and being a common carrier of passengers, is conclusively presumed to have invited all persons to ride who

do all that the law and the rules of the company require of them. (1 Duer, 571, 584; 10 N. H. 431; 8 Kas. 518. See also 59 Pa. St. 250; 86 id. 146, 147; 45 Conn. 284; 40 Ind. 37.)

6. The plaintiff in error insisted that it was the clear duty of the court to have held that the facts were indisputed, that no contract or duty existed, and that the injury was produced by the act of the plaintiff below, and from causes over which the railroad company neither had nor was bound to have control. But we submit that the court, from the facts and circumstances of this case, could not have said, as a matter of law, that there was no negligence on the part of the company. (17 Wall. 657; 41 Wis. 657; 50 Cal. 585; 5 Kas. 181; 14 id. 53; 16 id. 255–259, 383; 17 id. 389; 18 id. 195.)

7. There was no error in overruling the demurrer to the evidence. (12 Kas. 579; 18 id. 58; 17 id. 571; 16 id. 380; 21 id. 529.)

8. The general verdict and all the material findings of fact are sustained by the great preponderance of the evidence. This court will not reverse a judgment on the ground that the verdict is contrary to the evidence, even though the preponderance of the evidence appears to be against the verdict. (3 Kas. 283, 501; 4 id. 177; 8 id. 224, 474; 9 id. 399; 10 id. 126, 478, 587; 13 id. 35; 16 id. 252, 388; 17 id. 169; 18 id. 67, 419, 432; 20 id. 292, 456.)

9. If the railroad company owed defendant in error no duty but that of ordinary and reasonable care, still it is liable. (74 Pa. St. 424; 57 id. 187–193; 17 Wall. 657; 107 Mass. 108; 125 id. 133; 40 Miss. 399; 49 N. Y. 47; 18 Ohio St. 399; 24 id. 670; 30 id. 452–469. See also 40 Ind. 37–44; 26 id. 232; 59 Mo. 27; 64 id. 430–444; 86 Pa. St. 421; 57 id. 187; 74 id. 421; 14 Kas. 66; Whar. on Neg., § 379.) Even if it be conceded that Sue Flinn was a trespasser on the company's train, it owed to her the duty of ordinary care. (Wharton on Neg., § 354; 45 Conn. 284–297; 19 id. 507; 16 id. 421; 59. Mo. 231; 55 id. 469; 15 E. C. L. 91; 53 id. 376; 11 East, 568; 1 Denio, 98.)

10. The train should have been stopped at Iowa Point a sufficient time for the defendant in error to safely leave it. ( 54 Ill. 19; '59 id. 131; 21 Conn. 556–575; 40 Ind. 37; 26 id. 228; 39 How. [N. Y.] Pr. 407; 100 Mass. 208; Whar. on Neg., §§ 376–380.) The plaintiff in error having undertaken to carry the complainant, and being a common carrier of passengers, was liable to her for injuries, for want of due care, even though there was no consideration. (18 Kas. 293; Whar. on Neg., § 355; 40 Miss. 385.)

11. It was also the duty of the company to have provided a safe platform at said station. Its profession as a common carrier is an invitation to the public to enter and alight from its cars at its stations. (Hutchinson on Carriers, §§ 516–518; 26 Iowa, 124; 29 id. 170; 56 Me. 240–244; 39 Ind. 568; 24 Wis. 578.)

12. The negligence of third persons furnishes, in this instance, no excuse for the negligence of the company, and affords no reason why it should not respond in damages. (11 Allen, 505; 38 N. Y. 260; 36 id. 39; 19 id. 341; 20 id. 492; 32 id. 597; 64 id. 147; 62 Me. 240; 37 N. J. [Law] 89; 42 Md. 136–139; 47 Mo. 521; 14 Minn. 81; Whar. on Neg., §§ 144, 321, 324, 325, 336; Field on Damages, § 134, and cases cited.)

13. The law is well settled, that in passing upon the question of contributory negligence in the case of a child, it will be held responsible for the exercise of only such measure of capacity and discretion as from its age and experience it may be found to possess. (82 Ill. 198; 84 id. 486; 71 id. 601; 26 id. 258; 67 id. 25; 54 id. 482; 75 Pa. St. 83, 367; 31 id. 358, 372; 48 id. 218, 321; 65 id. 269; 47 id. 304; 22 Vt. 213; 36 Mo. 484; 60 id. 475; 41 Iowa, 75; 46 id. 231; 30 Md. 47; 39 id. 451; 45 Conn. 284, 298; 65 Barb. 92; 66 id. 43; 15 Wall. 408; 60 N. Y. 326; 36 id. 39; 38 id. 445, 455; 1 Head, 610; Whar. on Neg., §§ 309–322, and cases cited; Hutchinson on Carriers, §§ 665, 666; Field on Damages, § 192; 2 Redfield on Rlys. [3d ed.] § 177, and cases cited; 8 Minn. 154; 27 Mich 504; 22 Kas. 686; 5 id. 167; 10 id. 466; 12 id. 328.)

We submit that the defendant in error, under the circumstances and facts of this case, was guilty of no contributory negligence in attempting to leave the car at the time of the injury, even if she had been an adult. (49 N. Y. 47 ; 32 Pa. St. 292; 41 Ind. 48 ; 53 Mo. 509 ; 59 id. 27 ; 9 Metc. 1 ; 17 Ill. 406 ; 13 Pet. 181 ; ·24 Wis. 578 ; 30 Ohio St. 222 ; Whar. on Neg., §§ 377–381, and cases cited ; Hutchinson on Carriers, §§ 612–617, and authorities cited.)

The opinion of the court was delivered by

VALENTINE, J.: Martin Flinn commenced two actions in the district court of Doniphan county against the Atchison & Nebraska railroad company, for damages alleged to have been sustained by himself and daughter on account of personal injuries received by the latter. Both of these actions arise out of the same transactions, and are founded upon the same facts. One of them was commenced by Martin Flinn in his own name, and the other was commenced by him in his daughter's name, as her next friend. In the first, he claimed $5,500 damages; in the second, $25,000 damages. In the first, a demurrer was interposed by the defendant to the plaintiff's petition, which demurrer was overruled by the court, and the defendant excepted. No judgment seems to have been rendered. In the second, a trial was had before the court and a jury, and a verdict and judgment were rendered in favor of the plaintiff and against the defendant, for $12,500 damages. The defendant now brings both cases to this court, and asks for a reversal in each of them. We shall first consider the Sue Flinn case.

In this case (the Sue Flinn case) the facts, as they appear from the pleadings, the evidence and the findings of the jury, (especially the evidence,) are substantially as follows:

On October 5, 1877, the time when the accident occurred, and prior thereto and since, the defendant railroad company was and has been a common carrier of passengers and freight between Atchison, Kansas, and Lincoln, Nebraska, and between all intermediate points, including White Cloud and

Iowa Point, in Doniphan county, Kansas. Sue Flinn, at that time, was a little girl, aged four years, seven months and ten days; Martin Flinn was her father, and Mrs. Sophie E. Armstrong was her aunt. Minnie Dutton was also an aunt to Sue Flinn, but she was only a little girl, eleven years old, small of her age, but little larger than Sue Flinn, feeble, nervous, and had been afflicted with the Saint Vitus's dance. At about the hour of noon, or shortly afterward, a passenger train of cars belonging to the defendant, while on its way from Lincoln, Nebraska, to Atchison, Kansas, stopped at White Cloud, and Mrs. Armstrong put these two little girls upon the train, and on a passenger car, and the little girls went inside and took seats therein. Neither of the girls had any ticket, nor any money with which to pay fare; and it was not intended by Mrs. Armstrong or the girls that either of them should pay fare. It does not appear that any employé of the railroad company had notice that the little girls were put upon the train, and they were not placed in the care or custody of any person. In the car in which these little girls were placed were other persons, who were therein in the capacity of passengers. The little girls sat on a seat, with their faces turned toward the rear of the car. Shortly after they took their seats, a man, with whom they were acquainted, by the name of George Painter, came into the car, and took a seat immediately in front of and facing them, and entered into conversation with them. The train passed on toward Iowa Point. The conductor passed through the car in which the little girls and Painter and others were seated, and took fare from Painter, but took no notice of the little girls. It was a rule of the company not to take fare from children under five years of age, who were in company with some adult person, and the conductor sometimes allowed even older children to ride free under such rule; but small children like the plaintiff were not allowed to be on the train, except in the care or custody of some older person, competent to take care of them. Painter intended to get off the train at Iowa Point, and there was one other passenger on the train, by the

name of Oliver Davis, who also intended to get off at that place. When the train arrived at Iowa Point it stopped. Painter and Davis got off, and other passengers got on. Prior Plank and wife, and Miss Josephine Parker, for instance, got on. The train stopped a few seconds only, and then started. About the time that it started, the two little girls left their seats as though they desired to get off the train. Mr. F. J. Starr, a passenger on the train, who had got on at Lincoln, and who had sat near the little girls on the way from White Cloud down to Iowa Point, left his seat to help them. They went to the front end of the car. This was the rear car of the train. When they arrived at the front platform of the car, the train was in motion. Minnie Dutton stepped from the platform of the car upon the station platform in safety, and then stood there. Mr. Starr then helped Sue Flinn off; but when her feet touched the station platform, she fell forward, with her head toward the engine, and rolled off the platform, upon the ground between the car and the platform, and in her struggles, threw her legs across the nearest rail of the railroad track, and the hind trucks of the car ran over her legs, and crushed them so badly, (one just above the knee and the other below,) as to make amputation necessary. The car passed on a few feet further, and was stopped.

It appears from the evidence that it was the intention of Mrs. Armstrong and of the little girls that they should stop at Iowa Point, but it does not appear that this intention was ever communicated to any other person until after the little girls left their seats in the car for the purpose of getting off, and then only, by their actions. One witness testified that when Mr. Starr helped Sue Flinn off the car, she clung to his arm, or he to her, and the witness could hardly tell which. The station platform was slightly inclined downward, at the rate of about a half an inch to the foot from the station house toward the railroad track. Another witness testified that the little girl fell off the platform between the forward trucks of the car and the platform, and that "had she lain still, she would have been perfectly safe." Probably, however, she

fell off the platform further back than the forward trucks.
From the evidence, it also appears that, from the time the
child fell until after she was injured, all was confusion. Dif-
ferent signals were given to the engineer in quick succession,
to stop the train and to move ahead, and he did not know
what to do. He did not know and could not tell what was
actually transpiring. When the little girl fell, the conductor
and brakeman signaled the engineer to stop the train, and
the engineer by the use of the air brakes checked the train and
nearly stopped it. But immediately there came another sig-
nal to the engineer to move the train ahead, and he obeyed
this signal. This signal, however, was given by a passenger,
and was given by means of the passenger's pulling the bell-
rope. The engineer, however, supposed it was from the
conductor. Whether this signal was given before or after
the injury to the little girl, cannot now be told. Other sig-
nals, however, immediately following this signal to stop the
train, the engineer stopped it as soon as it could be stopped.
It was stopped by the use of the air brakes. The train
moved about forty feet or more after the first signal was given
before it was finally stopped. And then the train-men, see-
ing that the accident had already occurred, put the train in
motion and passed on toward Atchison. The train could
have been stopped within ten feet, according to the testimony
of one witness, if all the appliances for stopping the train
had been persistently used. Probably, however, this could
not have been done. There were several persons at the sta-
tion at the time the accident occurred, but they did not, and
indeed could not, do much, if anything, to save the child, for
they did not know of the danger until the child fell, and then
it was too late. Everything that transpired, from the time
when the child first left the car until it was run over and in-
jured, occupied but a few seconds of time—less time, probably,
than it takes to tell what happened. The railroad track at
that station was slightly curved, and the car leaned slightly
over the station platform.

The principal question in this case is, whether the forego-

ing facts constitute any cause of action in favor of the plaintiff and against the defendant. The question was raised in the court below, in various ways: by a demurrer to the plaintiff's petition, by a demurrer to the plaintiff's evidence, by a motion for judgment for the defendant on the special findings of the jury, and by a motion for a new trial. Upon the foregoing question the court below held in the affirmative, but upon just what ground or grounds it so held, it is difficult for us to tell. Among others, the court gave the jury the following instructions:

"2. That upon the evidence in this case the court instructs the jury that the plaintiff, Sue Flinn, was not a passenger on defendant's train at the time of the alleged injury.

"3. That the defendant was not bound to stop its said train at all at Iowa Point, as to the said plaintiff, to allow her to get off from such train.

"4. Nor would it be negligence of itself in defendant that its said train was not stopped at Iowa Point before the plaintiff, Sue Flinn, attempted to get off from said train."

From other instructions given and refused, it seems that the court below did not consider that the plaintiff at any time sustained that high and peculiar relation toward the defendant which we usually designate by the word "passenger;" and the court held that she was not, in fact, entitled to any of the rights or privileges of a passenger, but further held that she did sustain a relation toward the defendant, which required it and its employés, at all times, from the time when she first entered its car until she was finally injured at Iowa Point, to exercise that degree of care and diligence which is usually denominated ordinary care. And from the fact that the court below overruled the defendant's demurrer to the plaintiff's evidence, and sustained a verdict and findings against the defendant, and rendered a judgment against the defendant on such verdict and findings, the court below must have considered that the defendant, at some time, did not exercise ordinary care, and that its failure to do so caused the injury complained of. Or, in other words, the court below must have considered that the defendant, at some

time, was guilty of *ordinary negligence,* which contributed directly and proximately to the final injury of which the plaintiff now complains. But just where the court below would locate this negligence we cannnot tell, and probably it cannot well be told. The defendant carried the plaintiff safely from White Cloud to Iowa Point, and whether we consider her strictly as a passenger or as an innocent little girl on the train, with no particular rights there, but still innocently there, or whether we consider her as on the train in the nature of a tramp, attempting to steal a ride, still, certainly no negligence can be imputed to the defendant prior to the time when its employés first perceived that the plaintiff was in actual danger. The defendant did not know that the plaintiff wanted to get off the train at Iowa Point. And by the word "defendant," we here intend to include, not only the defendant proper, but also every one of its agents and employés. And as to the plaintiff, the defendant was not bound to know that she wanted to get off the train at Iowa Point. As to her, it was not bound to stop the train at that place, or to have a station there, or a platform there, or indeed any other accommodation. And if it did stop the train at Iowa Point, it was under no obligation to the plaintiff to wait for any particular length of time. It was under no obligation to the plaintiff to wait for a single second of time, or for any conceivable portion of a second. Indeed, it was under no obligation to the plaintiff to know, or even to suppose, that she wanted to get off the train at that place. A railroad company is not bound to stop a train at a station, even for a passenger, unless the passenger wants either to get off the train at such station, or to get on, and unless the company has received proper notice thereof. But in the present case, the train was stopped a sufficient length of time at Iowa Point for all passengers to get off and to get on safely, and it was only the tardiness of the little girls that delayed their getting off until the train was dangerously in motion. When the conductor passed through the car collecting fare, he had a right to suppose that they were in the care of Mr. Painter. And when

he and the other employés of the defendant saw Mr. Starr helping them to get off the car, he and the other employés of the defendant had a right to suppose that they were in the care of Mr. Starr. And at all times, the train-men had a right to suppose that they were in the care and custody of some person competent and able to take care of them. Indeed, no person ought to be required to suppose that a little girl, of the age of the plaintiff, would be put on a train or cars without her safety being first insured, by placing her in the care and custody of some person able to take care of her. Now Mr. Starr was a man fifty-five years of age, and apparently competent to take ample care of them; and the trainmen, and others standing near by, were, from appearances, amply justified in supposing that they needed no other help than his. If Mr. Starr had stepped off the car platform and upon the station platform with the plaintiff, probably she would not have fallen; and if she had not fallen, the accident certainly would not have occurred. No danger was apparent until she fell, and then it was too late for help. As soon as she touched the station platform she fell, and rolling off, and throwing her legs in front of the hind trucks, they were immediately crushed. As soon as the danger became apparent, it was of course the duty of the train-men, and of all others standing near the plaintiff, to save her if they could. But probably nothing could then have saved her. The conductor signaled to stop the train, and the engineer, who in fact did not know what had happened, obeyed all signals. Unfortunately, however, a passenger, by mistake, pulled the bell-rope, so as to signal the engineer to go ahead, which created some confusion. But probably the injuries could not have been prevented if no mistake had been made. And it is not shown that any of the defendant's employés made any mistake. They in fact did all they could to prevent the accident.

Now upon what ground can it be held that the defendant is liable? Actions are founded only upon wrongs. A cause of action can exist only where some right has been violated. A cause of action founded upon negligence can exist only

where the defendant owes some duty to the plaintiff, and wrongfully fails to perform that duty. Now what rights had the plaintiff, which the defendant violated? What duty did the defendant owe the plaintiff, which it failed to perform? What obligation was the defendant under to the plaintiff, which it disregarded? There can certainly be no room to claim that prior to the plaintiff's fall, the defendant owed her any duty, or was under any obligation to her which it failed to perform. Up to that time it infringed upon no rights of hers, and committed no breach of duty or of obligation; and up to that time it could not have anticipated that any such accident as that which did occur, was likely to occur. The defendant was always under obligation to the plaintiff not to injure her if it could possibly avoid it. We are all under such an obligation to one another. But being under such an obligation does not render us liable for accidents which we could not anticipate, and which we could not avoid. When the danger to the plaintiff became apparent, it was the duty of the defendant to avoid all injury if it possibly could; and if it did not then put forth every reasonable exertion to avoid the injury, it is liable; but if it did then put forth such exertion, it is not liable nor responsible, either in morals or in law. The operation of a railroad in a legal and proper manner is a lawful and legitimate business. A railroad company cannot be made responsible merely because an accident occurs in the operation of its road. The proper and legitimate exercise of a lawful business can never furnish the basis of a cause of action. No person can be held responsible for an unforeseen accident which incidentally occurs while he is in the rightful and proper exercise of his lawful business. As we have before stated, every cause of action must be founded upon a wrong; and it has never yet been held that the mere operation of a railroad is wrong.

With these views, we cannot think that the defendant is liable in this case. We do not think that any wrong has been shown on the part of the railroad company. Its employés did everything that could reasonably have been done to avoid the accident that occurred. It could not anticipate that the plain-

tiff would fall as she did, and after she fell the railroad company could not save her. As we have before stated, it was not the fault of the railroad company that the little girl was alone, or rather in company with another little girl, without any competent protector to take care of her, or to see her safely off the train, and at the right time.

If the foregoing views are correct, it follows that the court below committed error. We think that it committed error in overruling the defendant's demurrer to the plaintiff's evidence, and that nothing afterward transpired to cure this error. We also think that it erred materially in some of its other rulings. No cause of action was proved at any time in the case. The court below should have sustained the defendant's demurrer to the plaintiff's evidence; but failing in that, the jury should have found a verdict in favor of the defendant and against the plaintiff. The general verdict and some of the special findings of the jury were clearly against the evidence, and they should not have been allowed to stand. For instance, the jury found that no person, other than an employé of the defendant, pulled the bell-rope, so as to give a signal to the engineer to go ahead. This finding was against all the evidence upon the subject. Other special findings are fully as bad. The jury, however, conceded that the conductor took the usual course to stop the train, and that Mrs. Armstrong was negligent in putting the little girls on the train without any person to take care of them.

The judgment of the court below will be reversed, and the cause remanded for further proceedings; and while perhaps it would be proper for us to order judgment to be rendered in favor of the defendant, and against the plaintiff, for costs, yet we are not entirely clear upon that question, and giving the plaintiff the benefit of our doubts, we have concluded to order that a new trial be granted in the case, as asked for by the defendant.

In the Martin Flinn case, the ruling of the court must be affirmed; but the defendant should be allowed to answer if it desires to do so.

All the Justices concurring.