The Indianapolis, Peru and Chicago Railway Company *v.* Pitzer.

Filed Jan. 8, 1887.

---

No. 12,064.

## THE INDIANAPOLIS, PERU AND CHICAGO RAILWAY COMPANY *v.* PITZER.

RAILROAD.—*Negligence.*—*Permitting Child to Enter Train.*—The mere fact that a child of tender years is permitted by the persons in charge of a passenger train to enter it at a regular station, is not in itself sufficient to charge the railroad company with negligence.

SAME.— *Intruder.*— *Care Required Respecting Child.*— The conductor of a train, upon which a child seven years old has become an intruder, is

The Indianapolis, Peru and Chicago Railway Company v. Pitzer.

bound to use greater care in dealing with such child than is required respecting older persons.

SAME.—*Trespassing Child.*—*Duty of Trainmen.*— Where a young child is seen upon the track by the persons in charge of a train, more care is required than in the case of one who has reached the age of discretion. There is no presumption that it will heed signals of danger, and the engineer is bound to stop the train, if he sees that the child makes no attempt to leave the track.

SAME.—*Liability of Company.*—A boy seven years old, without the fault of his parents, wandered to a railroad station, entered a passenger train and was carried to a distant station, where the conductor put him off, leaving him in charge of no one, and giving no instructions concerning him. The child, left to himself, went upon the track, at a place near a highway crossing, where he could be seen for three-fourths of a mile by persons in charge of a train coming from the south. A freight train moving northward, in the daytime, on an ascending grade, where it could easily have been stopped had an effort been made to do so, ran upon and killed the child.

*Held*, that the railroad company is liable.

SAME.—*Damages.*—The responsibility of a wrong-doer for consequential damages resulting from his act, is the same in cases of actionable negligence as in cases of wilful or malicious torts.

SAME.—*Pecuniary Condition of Parent.*—*Attendants for Children.*—The pecuniary condition of the parent, and his inability to employ servants to take care of his children, are not proper subjects for consideration by the jury in an action by him for negligently causing the death of a child.

JUROR.—*Examination.*—*Supreme Court.*—*Practice.*—The Supreme Court will not pass upon a rejected question, propounded to a person called as a juror, touching his competency, unless the entire examination of such juror is set out in the record, in order that it may be shown whether any injury was done.

From the Howard Circuit Court.

*C. B. Stuart* and *W. V. Stuart*, for appellant.

*J. W. Kern, J. C. Blacklidge, W. E. Blacklidge* and *B. C. H. Moon*, for appellee.

ELLIOTT, C. J.—The material allegations of the appellee's complaint are these : That the son of the appellee, aged seven years and two months, without the fault or negligence of his parents, wandered to the depot of the appellant, in the city of Kokomo, and was carelessly and negligently permitted to

get on one of its passenger trains which stopped for five minutes at that depot; that the child was carried to Jackson station; that the conductor of the appellant's train " wrongfully, carelessly and negligently put the child, Arthur Pitzer, off at that station, without leaving him in charge of any person, or giving any one instructions concerning him;" that the conductor well knew that Arthur Pitzer had been carried to that point through the carelessness and negligence of the agents and employees of the defendant; that the child, having been thus wrongfully put off the train at Jackson station, without being placed under the control or in the charge of any person, and without the fault or neglect of his parents, was casually upon the track of the defendant at a point on the line thereof, at or near where a highway crossed it, about one and one-fourth miles north of Jackson station; that, at that point, between the hours of four and five o'clock P. M., he was run over and killed by a freight train of the appellant; that although he was on the track at a place where he could be seen, and was seen, by the trainmen for a distance of three-fourths of a mile, no signals of warning were given, but without such signals, and without any effort to stop the train, the employees of the defendant ran the train upon him, although there was an ascending grade, and the train could easily have been stopped.

We regard it as quite clear that the appellant was not in fault for allowing the child to get upon the train. If in any event a railroad company could be made liable for carelessly permitting a person, young or old, to get upon one of its passenger trains, it can not be made liable in such a case as that stated by the complaint. It does not appear that the child was not, so far, at least, as the servants of the appellant could observe, in company with adult persons who entered the train at the city of Kokomo, nor does it appear that the appellant's employees knew, or could have known, that he had no right to take passage. We suppose it to be perfectly clear that a child of tender years may enter a railroad train with-

out subjecting the company to the charge of negligence, and that the mere failure to keep a child off the train will not supply a foundation for an action. We know of no principle that requires railroad companies to keep watch to prevent persons, young or old, from entering their passenger trains at a regular station. If in any case of this character a railroad company can be made liable for allowing a child to enter one of its passenger trains, it can only be a case where facts are stated showing that it was wrong to permit the child to get upon the train, and here there are no such facts pleaded. We conclude, therefore, that the mere fact that the child was permitted to enter the passenger train creates no cause of action against the appellant, for he entered the train as an intruder. Intruders, infants or adults, can not, as a general rule, impose any duties upon the person on whose property they intrude. Lary v. Cleveland, etc., R. R. Co., 78 Ind. 323 (41 Am. R. 572); Everhart v. Terre Haute, etc., R. R. Co., 78 Ind. 292 (41 Am. R. 567); State, ex rel., v. Harris, 89 Ind. 363 (46 Am. R. 169), see p. 366; Nave v. Flack, 90 Ind. 205 (46 Am. R. 205), see p. 206; Evansville, etc., R. R. Co. v. Griffin, 100 Ind. 221 (50 Am. R. 783); Hestonville, etc., R. W. Co. v. Connell, 88 Pa. St. 520 (32 Am. R. 472); Morrissey v. Eastern R. R. Co., 126 Mass. 377 (30 Am. R. 686); Gavin v. City of Chicago, 97 Ill. 66 (37 Am. R. 99); McAlpin v. Powell, 70 N. Y. 126 (26 Am. R. 555); Snyder v. Hannibal, etc., R. R. Co., 60 Mo. 413; Zoebisch v. Tarbell, 10 Allen, 385; Brown v. European, etc., R. W. Co., 58 Maine, 384; Baltimore, etc., R. R. Co. v. Schwindling, 101 Pa. St. 258 (47 Am. R. 706); Atchison, etc., R. R. Co. v. Flinn, 24 Kan. 627.

These cases are to be discriminated from those in which one places dangerous agencies where trespassing children are likely to be injured by them; for here the company did what it was perfectly lawful for it to do, and that was, to run a passenger train in the manner in which such trains are usually managed. The class of cases to which we refer, although

numerous, have no application here. Of this class the following are representative cases: *Binford* v. *Johnston,* 82 Ind. 426 (42 Am. R. 508); *Dixon* v. *Bell,* 5 M. & S. 198; *Lynch* v. *Nurdin,* 1 Q. B. 29; *Carter* v. *Towne,* 98 Mass. 567; *Railroad Co.* v. *Stout,* 17 Wall. 657; *Bird* v. *Holbrook,* 4 Bing. 628; *Birge* v. *Gardner,* 19 Conn. 507; *Keffe* v. *Milwaukee, etc., R. W. Co.,* 21 Minn. 207 (18 Am. R. 393); *Nagel* v. *Missouri, etc., R. W. Co.,* 75 Mo. 653 (42 Am. R. 418); *Evansich* v. *Gulf, etc., R. W. Co.,* 57 Texas, 126 (44 Am. R. 586); *Townley* v. *Chicago, etc., R. W. Co.,* 53 Wis. 626; *Bransom* v. *Labrot,* 81 Ky. 638 (50 Am. R. 193); *Kansas, etc., R. R. Co.* v. *Fitzsimmons,* 22 Kan. 686 (31 Am. R. 203).

The cases last cited all recognize the rule that children of tender years are not to be treated as persons of mature years. This is a reasonable and humane rule, and any other would be a cruel reproach to the law; but the law merits no such reproach, for, throughout all its branches, whether of tort or contract, there runs, like the marking red cord of the British navy, a line distinguishing children of years too few to have judgment or discretion, from those old enough to possess and exercise those faculties. This is a doctrine taught by every man's experience, and sanctioned by our law. A departure from it would shock every one's sense of justice and humanity. Cases very closely resembling the present recognize and enforce this distinction, and without substantial diversity of opinion the general principle is recognized, although there is not entire uniformity in its application. Dr. Wharton, in discussing the general subject, says: "The protection of the helpless from spoliation is one of the cardinal duties of Christian civilization; and when those so helpless are young children, this duty is aided both by the instincts of nature and the true policy of the State." Wharton Neg., section 313. Mr. Thompson says: "The general rule is, that where the injury is caused by the actual negligence of the company, the child can be expected to use discretion only

in respect of its years; and the total incapacity of a child to know the danger, and avoid it, shields it from responsibility for its acts. Greater care, therefore, must be exercised in reference to children than to adults." 1 Thompson Neg. 452. Another author says: "When the trespasser is an infant, the railway company, on the one hand, is held bound to exercise a higher degree of care and caution than is required as to adults, and the infant, on the other hand, is not required to exercise a discretion and prudence beyond its years, but only that measure of sense and judgment which it may reasonably be expected to possess in view of its age." Beach Cont. Neg. 211. Cases in great numbers might be collected supporting the general doctrine declared by these authors, and applying it to almost every conceivable phase of the question, but we deem it unnecessary to cite these cases, as there is little, if any, diversity of opinion. The principle of which we are speaking supplies the initial proposition for this discussion, since it enables us to declare that the conductor was bound to use much greater care in dealing with a child of seven years than he would have been required to exercise respecting an older person. The care exercised by him was not such as under the circumstances it was his duty to exercise. Expelling from the train, miles from its home, a child so young as to be incapable of taking care of itself or of comprehending the danger of its situation, without asking any one to give it attention or look after its safety, was not such care as humanity and justice require; but we do not place our decision upon this point alone, for we think that the conductor's want of care must be taken in conjunction with the wrong of the engineer and those in charge of the freight train, in negligently failing to stop the train when it was within their power to do so before it ran upon the child. These two leading facts, when combined, make a case establishing negligence on the part of the appellant, and excluding contributory negligence on the part of the child. We can not undertake to comment upon all of the many cases.

which declare principles that rule such cases as this, but we deem it not unprofitable to refer to some of the decisions which light our way to a just conclusion.

In *Louisville, etc., R. R. Co.* v. *Sullivan*, 81 Ky. 624 (50 Am. R. 186), a man, so drunk as to be helpless mentally and physically, was put off a railroad train, on a cold winter night, by a conductor who knew his condition. The passenger so ejected from the train was severely frozen, and in a very strongly-reasoned opinion the company was held liable. The doctrine of this case is perhaps an extreme one, and to be carefully limited, yet it is not easy to answer the reasoning of the court or meet the force of the authorities cited.

In our own case of *McClelland* v. *Louisville, etc., R. W. Co.*, 94 Ind. 276, the company was held to be not responsible for the killing of a drunken man who was put off the train and wandered back upon the track and was killed ; but the theory upon which that case was decided hardly meets the question as presented in this case, or in *Louisville, etc., R. R. Co.* v. *Sullivan, supra,* for the facts are not the same in the two cases.

The court in the case of *Atchison, etc., R. R. Co.* v. *Weber*, 33 Kan. 543 (52 Am. R. 543), approved this instruction : " Of course the carrier is not required to keep hospitals or nurses for sick or insane passengers, but when a passenger is found by the carrier to be in such a helpless condition, it is the duty of the carrier to exercise the reasonable and necessary offices of humanity toward him until some suitable provision may be made. " And it was held that it was proper for the carrier to transport a passenger suffering from *delirium tremens* to one of its stations, and there place him in charge of the overseer of the poor.

Discussing a question somewhat similar to that involved in the cases cited, the Supreme Court of Ohio said : " It might, perhaps, as far as this case is concerned, be conceded that if a man were so intoxicated as to be without reason, sense, or intelligence, it would be unlawful, as it would be inhuman, to expel him from cars at night, where he would be just as

likely as not to lie down upon the rails and go to sleep. We may concede further, that to put off a drunken man, during a bitterly cold night, in the woods, far from any house, when the probabilities were that he would freeze to death before help could reach him, would be as indefensible in law as it would be wicked and cruel in fact." *Railway Co.* v. *Valleley*, 32 Ohio St. 345 (30 Am. R. 601).

These are cases, extreme ones it may be, illustrating the doctrine that regard must be had to the helpless condition of one who enters a railroad train, and that those in charge of the train must do no act which is cruel or inhuman. Granting that these cases are extreme ones, still, the general doctrine which they assert is undeniably a sound one, for through all the cases runs the principle that what humanity requires must be done by those who act with knowledge of another's helplessness. *Weymire* v. *Wolfe*, 52 Iowa, 533 ; *Northern Central R. W. Co.* v. *State*, 29 Md. 420; *Walker* v. *Great Western R. W. Co.*, L. R. 2 Exch. 228 ; *Swazey* v. *Union Manfg. Co.*, 42 Conn. 556 ; *Atlantic, etc., R. R. Co.* v. *Reisner*, 18 Kan. 458 ; *Marquette, etc., R. R. Co.* v. *Taft*, 28 Mich. 289 (opinion of COOLEY, J.) ; *Terre Haute, etc., R. R. Co.* v. *McMurray*, 98 Ind. 358 (49 Am. R. 752).

This principle supplies a solid foundation for the rule that the age of a child is an important element to be considered in determining whether the person who injured him was negligent, as well as in determining whether the child himself was guilty of contributory negligence. We know that there are many cases which hold, and rightly hold, that children may be guilty of negligence. *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25 ; *Higgins* v. *Jeffersonville, etc., R. R. Co.*, 52 Ind. 110 ; 2 Wood Railway Law, 1272, 1273.

A child's age and helplessness may, however, often excuse where one of mature age would be adjudged in fault, and may also often make an act negligent as to him that would not be so as to one of riper years. It is upon this principle that a recent writer—who fortifies his assertion by many

cases—is sustained in saying: "But there is no presumption that a young child or a drunken person will heed the signals of danger, and the engineer is bound to stop the train if he sees that they make no attempt to leave the track." 2 Wood Railway Law, 1268*n*.

Doubtless the rule is to be very guardedly applied to one who voluntarily incapacitates himself, since he himself is guilty of a wrong not easily palliated, and it is not easy for an engineer to distinguish a drunken man from a sober one; but, with respect to a child of seven years of age, it is far otherwise, for nature has incapacitated it and the engineer can readily distinguish from his stature and appearance the difference between it and a person who has attained years of discretion. Illustrating the subject we are discussing, is a decision by a court which has applied with as much strictness as any in the land the law against children, wherein it was held that negligence could not be imputed to a boy nine years of age who had climbed through a train of freight cars and was injured. *Pennsylvania Co.* v. *Kelly*, 31 Pa. St. 372. In another case in that court it was said: "He acted like a child and like a child he must be judged." *Rauch* v. *Lloyd*, 31 Pa. St. 358. In still another case in that court it was held, that where a boy was carried against his will for five miles, and in returning home received injury, the wrongdoer must respond in damages. *Drake* v. *Kiely*, 93 Pa. St. 492. The case of *Lovett* v. *Salem, etc., R. R. Co.*, 9 Allen, 557, decides that a railroad company is liable for injury to a child ten years of age, who was wrongfully on a street railway car, and jumped from it, while it was moving rapidly, at the direction of the driver; the court placing its decision upon the ground that the child was young and could not be expected to act as an adult would do.

It was held in *Kline* v. *Central Pacific R. R. Co.*, 37 Cal. 400, that the company was liable where a boy sixteen years of age leaped from a train upon which he was a trespasser, at a show of force displayed by the conductor, and the prin-

ciple asserted in *Lovett* v. *Salem, etc., R. R. Co., supra,* was accepted as the ruling one.

In *Meeks* v. *Southern Pacific R. R. Co.,* 56 Cal. 513 (38 Am. R. 67), an infant of six or seven years of age was sleeping on the track, and it was held that as those in charge of the train were bound to keep a vigilant watch, the company was liable for injuring the child, that its employees might have seen and rescued from danger.

A very able court, speaking by one of its ablest judges, said, of the duty of an engineer: "If, however, he sees a child of tender years upon the track, or any person known to him to be, or from his appearance giving him good reason to believe that he is, insane, or badly intoxicated, or otherwise insensible of danger, or unable to avoid it, he has no right to presume that he will get out of the way, but should act upon the belief that he might not, or would not, and he should therefore take means to stop his train in time." *Lake Shore, etc., R. R. Co.* v. *Miller,* 25 Mich. 274. Other cases assert similar doctrines, and to them we refer without further comment. *Baltimore, etc., R. R. Co.* v. *State,* 33 Md. 542; *Isbel* v. *New York, etc., R. R. Co.,* 27 Conn. 392; *Isabel* v. *Hannibal, etc., R. R. Co.,* 60 Mo. 475; *East Tennessee, etc., R. R. Co.* v. *St. John,* 5 Sneed (Tenn.) 524.

The complaint explicitly avers that there was no negligence on the part of the parents, so that the question turns, so far as the element of contributory negligence is involved, solely upon the conduct of the child.

It is contended that the injury to the child was so remote that it can not be attributed to the negligent act of the appellant. This question has been recently so fully discussed by us that we do not deem it necessary to again enter upon an extended discussion of the subject. *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409; *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346 (49 Am. R. 168); *Dunlap* v. *Wagner,* 85 Ind. 529 (44 Am. R. 42); *Billman* v. *Indianapolis, etc., R.*

*R. Co.*, 76 Ind. 166 (40 Am. R. 230); *Cincinnati, etc., R. R. Co.* v. *Eaton*, 94 Ind. 474 (48 Am. R. 179).

Many of the cases we have here cited assert a doctrine in strict harmony with our own cases, and, indeed, the doctrine is expressly held in the famous Squib case, upon which authors and courts have founded their statements and decisions for many years. In that case no wilful or malicious tort was committed, for the defendant threw the lighted squib in sport, and this, being passed from hand to hand, at last struck the plaintiff's ward, and put out his eye. All the judges agreed that the defendant was liable, although they differed as to whether the action should be case or trespass, one of the judges saying that " Wherever a man does an unlawful act he is answerable for all the consequences." *Scott* v. *Shepherd*, 2 W. Bl. 892.

There is, in truth, no case that has been recognized as sound, that holds that the rule as to the responsibility of the wrongdoer is different in cases of actionable negligence from that which prevails in cases of wilful or malicious torts. There is a difference as to the measure of damages, for, where the tort is malicious, exemplary damages may be recovered, but such damages can not be recovered in cases of negligence. This consideration has, however, no influence upon the question of a negligent wrong-doer's responsibility for the consequences resulting from his act.

The appellant propounded a question to a person called as a juror, and the trial court refused to permit it to be answered. The record does not properly present the point which the appellant essays to make upon this ruling, as it sets forth only the question asked the juror. In order to enable this court to ascertain whether any injury was done the appellant, the entire examination of the juror should have been brought into the record. *Johnson* v. *Holliday*, 79 Ind. 151.

The appellee introduced evidence, over the appellant's objection, to prove that he was too poor to employ servants to take care of his children. The ojection to this testimony was,

however, too general to present any question. It is settled that objections must be specific. *Louisville, etc., R. W. Co.* v. *Falvey, supra,* and cases cited.

In one of the instructions given by the court, the pecuniary condition of the appellee, and his inability to employ servants, were submitted to the jury as proper matters to be considered by them. This was error, and, in view of the fact that there was evidence of that character before the jury, prejudicial error. *City of Delphi* v. *Lowery,* 74 Ind. 520 (39 Am. R. 98), and authorities cited; *Mayhew* v. *Burns,* 103 Ind. 328; *Rooney* v. *Milwaukee Chair Co.,* 65 Wis. 397.

In *Hagan's Petition,* 7 Cent. L. J. 311, Judge DILLON used language very similar to that employed by us in *City of Delphi* v. *Lowery, supra,* and that language we quote: "Some of the cases seem to make the liability depend upon the means of the parents, and to countenance a distinction as to contributory negligence between parents able to employ nurses or attendants, and those who are not. This distinction may be doubted; for there is not, in this country, one rule of law for the rich, and a different rule for the poor. It extends its protecting shield over all alike."

As was said in *Mayhew* v. *Burns, supra,* "What some must do, in respect of denying themselves servants, or their children attendants, every other may do, and whether done from choice or necessity, negligence can not be predicated upon the one or excused by the other."

Any other rule would be impracticable as well as unsound in principle. If the pecuniary condition of the parent is accepted as a standard, all is uncertain, for no definite amount of pecuniary means can be taken as a guide, since it would be impossible to determine what a parent should be worth in order to impose upon him the duty of employing nurses or attendants for his children. So, too, such a rule as that for which appellee contends would graduate the number of attendants by the wealth of the parent, and thus lead to inquiries entirely foreign to the merits of the case. But, inde-

pendent of these considerations, the rule is unsound in principle, because it would impose upon all who use our streets and highways, or who conduct manufactories, or own property, an unjust burden, as it would make them liable to the negligent, and this is a duty that ought not to be imposed upon any one.

The rule which we have adopted is just to all, the rich and the poor alike, and it imposes no hardship upon any one, for it only requires that parents shall be ordinarily prudent and careful, whether rich or poor.

Judgment reversed.

Filed April 14, 1886.

## On Petition for a Rehearing.

Elliott, C. J.—In their brief counsel for appellant say: "We desire a rehearing and modification of the opinion in three particulars:

"1st. The ruling of the court on the question asked of the juror.

"2d. The boy in this case was of sufficient age and experience to be held responsible for the acts committed by him, if he himself were the plaintiff; and as the father is plaintiff he is not in as favorable a position as the boy would have been.

"3d. There was no negligence on the part of the conductor of the passenger train, proximately causing the injury; and as the boy was a trespasser on the track, there was no unperformed duty on the part of the employees in charge of the freight train which caused the injury."

The first point is disposed of by the case of *Johnson* v. *Holliday*, 79 Ind. 151, cited in our former opinion. We have no doubt that we were right in holding, as we did in that case, that the record must contain, not the single question and the one answer of the juror, but his whole examination. It may well be that other questions and answers would show that no injury was done the appellant. This must be presumed, for it is as plain a rule of law as there is in all the

books, that an appellant must affirmatively show error in the rulings of the trial court, for, until the contrary is shown, all reasonable presumptions are indulged in favor of those rulings.

We are at a loss to ascertain what is sought by the appellant, for, aside from the proposition just disposed of, we decided but two others, one of these was in its favor, and the other, which was against it, was that the complaint was good. These were the only points decided, and, of course, the only conjecture we can make is, that the appellant is dissatisfied with our ruling upon the complaint, for the general abstract statements made in the counsel's brief do not enable us to very clearly comprehend just what it is that they find fault with. We were careful to say in our former opinion that we did not place our decision upon the wrongful act of the conductor in putting the child off of the train, without consigning him to the care of any one, but "that the conductor's want of care must be taken in conjunction with the wrong of the engineer and those in charge of the freight train, in negligently failing to stop the train when it was within their power to do so before it ran upon the child. These two leading facts," we said, " when combined, make a case establishing negligence on the part of the appellant."

It thus appears that our decision rested on the entire complaint and not on a part of it. As it seems that counsel misunderstand that part of the complaint which describes the manner in which the child was killed, we set it out: "Said child having been thus wrongfully and negligently put off of said train at said point as aforesaid, without being placed in the control or in the custody of any one, and without the fault or neglect of his parents, he, the said Arthur Pitzer, was casually upon the track of said defendant at a point on the line of said railroad, at or near a public highway crossed by said railroad track, about one and one-fourth miles north of said Jackson station ; that at said time, which was between the hours of four and five o'clock

P. M., said defendant was running a locomotive and freight train, which was coming from the south; that while said Arthur Pitzer was upon said track at or near the crossing of said public highway, and on the north side thereof, he could have been distinguished by the servants, agents, and employees of said defendant, then running said locomotive and train of cars, for a distance of three-quarters of a mile, within which distance said locomotive and cars could have been easily stopped, said track being up grade to said crossing from the point where said Arthur could have been distinguished as aforesaid, but that said defendant, its agents, servants and employees, wrongfully, negligently and carelessly, without giving any signal or warning, or in any way attempting to stop said train, and while said child might have been and was seen by the defendant's agents, servants and employees then running said train of cars, ran said locomotive and train of cars over the said Arthur Pitzer."

We think the case presented by the complaint an unusually strong one, and far within the authorities. If the employees of a railroad company see a child of seven years of age upon the track, far enough off to easily stop the train, but, instead of stopping it, negligently run upon it and crush it to death, then, upon the clearest principles of justice and right, the company is liable. In our former opinion we cited many cases sustaining that conclusion. But in this case we have the further element that the conductor put the child off at a station, unattended and uncared for, and without commending him to the care of any person.

We did not depart from our own decisions in affirming, as we did, that more care is required where a child of tender years, or a helpless man, is seen upon the track, than where one who has reached the age of discretion, and appears to be in possession of his faculties, is seen on the track.

In the case of *Pittsburgh, etc., R. W. Co.* v. *Vining*, 27 Ind. 513, a child of seven years of age was treated as too young

to be guilty of negligence, and a complaint not nearly so strong as the present was held good. *Lafayette, etc., R. R. Co.* v. *Huffman*, 28 Ind. 287, does not at all conflict with our conclusion. On the contrary, it gives it strong support, for it was there said: "Thus, if an engineer of a locomotive discovered a young child on the railroad track, he would be required to use greater effort to stop the train than could have been expected from him if he had discovered a grown person in the same situation. In the latter case, he could reasonably depend more upon the judgment and presence of mind of the person on the track to save himself from danger than in the former case."

Surely the appellant can not get any support from the doctrine of the case cited. It might doubtless do so, if the complaint did not negative negligence on the part of the child's parents, but this is expressly negatived in the complaint before us. In the case of *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25, a recovery was denied because there was contributory negligence; but in this case that is expressly negatived. The complaint in *Jeffersonville, etc., R. R. Co.* v. *Bowen*, 40 Ind. 545, was not so strong as the present, and the court said that it could see no objection to it. In *Binford* v. *Johnston*, 82 Ind. 426, this court asserted that the same rules were not applicable to children as to adults, and the assertion was supported by the citation of many authorities. This principle is also recognized in *City of Indianapolis* v. *Emmelman*, 108 Ind. 530.

Turning now to the cases cited by the appellant from other courts, we find counsel saying: "In *Scheffler* v. *Minneapolis, etc., R. W. Co.*, 32 Minn. 518, a child eighteen months of age was killed. Held, the child was a trespasser, and the company was not required to anticipate that it would be on the track." But a moment's reflection must produce the conviction that this doctrine can not apply to a case where the child was seen and distinguished. That we are right in our interpretation of that decision is apparent from the language

employed by the court in the case referred to, for it was said : " If the engineer had seen him, and then had not exercised proper care to avoid striking him, there would have been a different case. *Locke* v. *First Division St. Paul, etc., R. R. Co.*, 15 Minn. 350."

In the case of *St. Louis, etc., R. W. Co.* v. *Freeman*, 36 Ark. 41, the decision, so far as it concerns the question here under discussion, is against the appellant, for it was there held that the company was not responsible, " unless the trainmen, after discovering the child, omit the use of reasonable precaution to avoid the injury." Here the company is responsible, because after having seen the child, they used no precaution at all, although the train might have been easily stopped. The decision in *Prendegast* v. *New York, etc., R. R. Co.*, 58 N. Y. 652, is also against the appellant, for, to quote the language of the case, " a child of such tender age was clearly *non sui juris*, and his conduct therefore presented no bar to a recovery. *Ihl* v. *Forty-Second Street, etc., R. R. Co.*, 47 N. Y. 317."

In the case cited by the court in the quotation we have made, the child fell upon the track at a sufficient distance in front of a street car to have enabled a sister, who was with her, to have extricated her, " had the driver," to use the language of the court, " been observant of what was passing and slackened his speed." And it was held that " The conduct of the infant may have an important bearing on the question of the defendant's negligence, but when the latter is clearly negligent, contributory personal negligence on the part of an infant obviously not *sui juris* can not be alleged, unless negligence on the part of his guardian or custodian has brought about the situation, or in some manner contributed to the injury. *Mangam* v. *Brooklyn R. R. Co.*, 38 N. Y. 455, 460."

In the case cited by the court in the extract just given, it was held that there was a difference between children of tender years and adults, and the cases of *Hartfield* v. *Roper*, 21 Wend. 615, *Robinson* v. *Cone*, 22 Vt. 213, and *Daley* v.

*Norwich, etc., R. R. Co.*, 26 Conn. 591, were cited. It appears, therefore, that when we get to the foundation of the New York case cited, it is against the appellant instead of in its favor upon the material point here involved, namely, whether the trainmen had the right to expect the same care of a child of tender years as from an adult. In the other New York case cited, a boy, described by the court "as a bright, active boy, about seven years of age, considered competent by his parents to go to school and upon errands alone," attempted to run across the track in front of a train approaching a crossing over which he had often gone, and it was held that there could be no recovery. It is obvious that there is a wide difference between that case and this, where the boy was seen on the track in time to stop the train, and where negligence on his part and on that of his parents is directly negatived. *Cauley* v. *Pittsburgh, etc., R. W. Co.*, 95 Pa. St. 398 (40 Am. R. 664), was a case in which boys got upon a car, and when ordered off by the conductor, while the train was in motion, leaped from it and one was injured. Of this case it is, perhaps, enough to say that it is not in point, but it may be added that it is in direct conflict with many cases, and certainly with one in the same court. *Baltimore, etc., R. R. Co.* v. *Schwindling*, 101 Pa. St. 258, simply decides, what we strongly asserted in our former opinion, that the railroad company is not liable for an injury to a child on its train as an intruder, because of any negligence in the construction of the road or machinery.

In *Marcott* v. *Marquette, etc., R. R. Co.*, 49 Mich. 99, the decision was the third one in the case, but it does not touch the point here involved, for it was decided upon the ground that the child was not seen, the court saying : " The engineer was watching the track for obstacles and discovered none." When the case was in the court the second time, it was held that " The lookout upon a locomotive must be as efficient as the circumstances require, and especially so when the chances of access to the track are greater than usual." *Marcott* v.

*Marquette, etc., R. R. Co.*, 47 Mich. 1. This doctrine is clearly hostile to the appellant's views, and is in harmony with the ruling in *Lake Shore, etc., R. R. Co.* v. *Miller*, 25 Mich. 274, cited in our former opinion.

The decision in *Chicago, etc., R. R. Co.* v. *Stumps*, 69 Ill. 409, does not by any means support the appellant's contention. In that case a boy seven years of age climbed on a train and was injured. It was held that there could be no recovery, because there was no negligence on the part of the company, but the court said : " The proof shows appellee was only seven years of age when he sustained the injuries. He was too young to be charged with negligence, and could be held to no care other than such as a child of that age could be expected to exercise for its personal safety. The principal question in the case, therefore, is, whether the employees of the company were guilty of culpable negligence in the management of the train."

In *Bishop* v. *Union R. R. Co.*, 14 R. I. 314 (51 Am. R. 386), a boy of six years of age wrongfully jumped on a moving car, and was injured in leaving it. It was held that the company was not liable, because the boy was an intruder, and it appeared that, as the court said, " the driver did not see the boy, and knew nothing of the accident." It is impossible for us to perceive what application that case has to the present.

In *Morrissey* v. *Eastern R. R. Co.*, 126 Mass. 377, a child not seen by the engineer was run over, and it was held that the company was not liable, the court saying: " The defendant corporation owed him no duty, except the negative one not maliciously or with gross and reckless carelessness to run over him." It is apparent from the cases decided by that court, and cited in our former opinion, that had the child been seen in time to have stopped the train by the exercise of reasonable care, the company would have been held liable.

The decision in *Chicago, etc., R. W. Co.* v. *Smith*, 46 Mich. 504 (41 Am. R. 177), was placed entirely upon the ground

that there was no negligence on the part of the railway company, the court saying : "In other words the injury resulted from an accidental fall of the boy and without any carelessness or negligence of the company's servants." It is evident from the cases cited in our former opinion, that the Supreme Court of Michigan is far from sanctioning the doctrine asserted by the appellant, and it is perhaps unnecessary to refer to other decisions in that court, but if there were doubt on this subject it would be removed by the opinion of the court, written by Judge COOLEY, in *East Saginaw City R. W. Co.* v. *Bohn,* 27 Mich. 503. In that case it was held that it was not enough for the conductor of a street railway car to warn a child not to ride on the platform, but that he must employ more efficient means to remove him from danger. The cases of *Hargreaves* v. *Deacon,* 25 Mich. 1, *City of Chicago* v. *Starr,* 42 Ill. 174, and *Hughes* v. *Macfie,* 2 H. & Colt. 744, are not in point, for they belong to an entirely different class of cases from the present.

We have thus patiently, and, perhaps, at unnecessary length, reviewed all of the cases cited by appellant, and find that not one among them all supports the proposition, that where a child is seen upon the track in time to easily check the train, he may be run over and killed without any effort to stop the train.

The authorities, as we feel confident in affirming, all agree that there is a difference between children of tender age and persons old enough to possess judgment and discretion. We sought to make this distinction. prominent, for we thought, and still think, that it is of controlling importance. An adult, it may be presumed, will, after warning, leave the track when danger approaches, but this is not presumed where very young children are on the track of a railroad. Where a young child is on the track, it can not be presumed, as in the case of an older person, that he will leave it in time to avoid an approaching train. Under the authorities, it is probable that this complaint would not have been good had Arthur Pitzer

been old enough to be presumed to exercise judgment and discretion; but it is good, because he was a child of tender years. It was necessary, therefore, to emphasize, as we did, his age, for, had he been of mature years, it might, perhaps, have been presumed by the trainmen that he would have left the track in time to escape the approaching train. But we are not here dealing with the case of a person who had arrived at years of discretion, but with the case of a young child, and we decide nothing that can be considered as applicable to any other case.

We think it very clear, upon the whole complaint, that the damages laid are the proximate result of the appellant's tort. We are also of the opinion that there is such a connection between the conductor's tort in putting the child off of the train, and the wrongful acts of the other employees of the appellant, as makes it proper to unite these acts in one complaint. We are clear, that, upon all the facts pleaded, the complaint makes a case entitling the appellee to compensatory, but not exemplary, damages.

Petition overruled, at the costs of the appellant.

