CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v.
LEO KRAYENBUHL.*

FILED OCTOBER 9, 1902.     No. 10,327.

Commissioner's opinion, Department No. 3.

1. Petition: DEMURRER ORE TENUS. Petition examined, and *held* good,
as against a demurrer *ore tenus*.

2. Dangerous Premises: CHILDREN: INJURIES: PROTECTION. When
the owner of dangerous premises knows or has good reason to
believe that children, so young as to be ignorant of the danger,
will resort to such premises, he is bound to take such precau-
tion to keep them from such premises, or to protect them from
injuries likely to result from the dangerous condition of the
premises, while there, as a man of ordinary care and prudence,
under like circumstances would take; approving *Atchison & N.
R. Co. v. Bailey*, 11 Nebr., 332, 336.

3. Negligence. In such cases, in the determination of the question
of negligence, regard must be had to the character and location
of the premises, the purpose for which they are used, the
probability of injury therefrom, the precautions necessary· to
prevent such injury, and the relation such precautions bear to
the beneficial use of the premises. If, under all the circum-
stances, the owner omit such precautions as a man of ordinary
care and prudence would take, under like circumstances, he is
guilty of negligence.

4. ———. Ordinarily, the question of negligence is one of fact for
the jury, to be determined from all the facts and circumstances
shown in evidence, and it is error for the court to group cer-
tain facts in evidence together, and instruct the jury that they
constitute negligence.

5. Action by Infant: EARNING CAPACITY. In an action, by an infant
in the care and custody of its father,· for personal injuries it
is ·error to instruct the jury that his lessened earning capacity
is an element of. damages, unless it be limited to the period
from which he would be entitled to his earnings.

6. Instruction. An instruction authorizing the jury, in arriving at
a verdict, to bring to bear their own knowledge, observation
and experience in the business affairs of life, is erroneous, when
not limited to such knowledge, observation and experience as
they share in common with men generally.

7. Instruction. An instruction relative to the damages to be awarded
the plaintiff, if any, closed with the statement that they should
not exceed a specific amount, naming the amount claimed in

*28 Am. & Eng. R. Cases, 35.

the petition. *Held*, That the practice of thus referring to the amount claimed, should be discountenanced.

8 **Instructions.** Instructions tendered examined, and *held* properly refused.

9. **Admission of Evidence.** Rulings on the admission of evidence examined, and *held* not erroneous.

ERROR from the district court for Merrick county. Tried below before THOMPSON, J. *Reversed.*

*J. W. Deweese, John Patterson* and *Frank Elmer Bishop,* for plaintiff in error:

Leo Krayenbuhl, a minor seven years of age, by his father, Samuel Krayenbuhl, as next friend, recovered a judgment of $5,000 against the plaintiff railroad company as damages for the loss of one of his feet, which was cut off while he and other children were playing upon the turntable of the defendant company at Palmer, Nebraska. This accident occurred Sunday, October 20, 1895. Palmer was a village of less than 200 inhabitants, through which two lines of the plaintiff in error's road ran in a northwesterly direction. Some 2,000 feet northwest of the depot, between the two lines of road, was a turntable and adjacent roundhouse. On the Sunday in question, the plaintiff's elder brothers and sisters placed him upon the turntable, and the two girls, one being on each side of the table, loosened it from its fastenings and revolved it by means of the levers at the ends. In the course of the first revolution, the plaintiff's right foot was caught and mangled between the ends of the rails. The turntable was one of the ordinary kind used by railroad companies and necessary for the turning of engines and cars. The table itself was seventy-two feet across and was sunk into a pit so that the rails upon it corresponded in height with the rails on the track leading up to the table, and the whole machine was thus below the surface of the ground. It was surrounded by a circular wooden wall. There were two arrangements for fastening the table so that it would not revolve: (1) At one end of the rails on the table there

was an iron bolt, 4x6 inches, extending from the frame of the table into the timber frame inclosing the table. This bolt was arranged to be extended or withdrawn by a lever and would securely hold the table when extended into the socket in the surrounding frame of the table; (2) the other arrangement was by means of a bar of iron which was fastened to the table by means of a staple driven through the planks into a cross-tie; an opening in the other end of the bar passed over another staple driven into a tie under the track upon the ground. This end was fastened to the staple by means of a padlock, passing through the staple over the bar. On Saturday evening, between 4 and 6 o'clock, was the last time the table was used before the boy was hurt on Sunday forenoon. William Young was the roundhouse-foreman and had charge of the turntable. Under the rules of the company the agent had no more responsibility for the turntable than the father of the defendant in error, who was, also, an employee of the company. Young assisted the trainmen in turning their engines and starting the trains on Saturday evening. He locked the turntable with the padlock and shoved the iron fastening or bolt of the table into the frame surrounding it, and left work at 6 o'clock Saturday evening. There were no trains on Sunday. The railroad company's grounds were fenced on both sides northwest of the depot to beyond the roundhouse. Commercial street, running east and west, crossed the track north of the depot. Across the street, north of the depot, was the section-house—the home of the defendant in error. The children in the absence of their parents went to the turntable and got into trouble as aforesaid.

The allegations of the petition are too specific to stand as a general allegation. *Omaha & R. V. R. Co. v. Wright,* 49 Nebr., 457.

The petition is insufficient as to invitation, to wit: (1) it does not allege the authority of any agent to invite; (2) it does not allege any facts which constitute an invitation; (3) it does not allege characteristics of con-

struction or location, which of themselves rendered the table an invitation to danger. All these must be specifically alleged and proved. *Schmidt v. Kansas City Distilling Co.,* 90 Mo., 284; *San Antonio & A. P. R. Co. v. Morgan,* 46 S. W. Rep. [Tex.], 28.

The plaintiff's whole case and recovery are based upon the theory that the turntable, although a necessary and properly constructed and operated machine, is yet a dangerous one for children to play upon, and from its nature is enticing and inviting to children, and that on account of its alluring character, children are likely to go upon it and be injured. There can be and is in this case no actual invitation on the part of the company that the plaintiff should go upon the company's grounds, much less upon its turntable. Every intention and action of the company was to prevent his going upon the table; he was a trespasser. The mere temptation of children to go upon the turntable does not amount to an invitation on the part of the company or charge it with any obligation to the trespassing plaintiff further than not willfully or unnecessarily to injure him. *Formall v. Standard Oil Co.,* 86 N. W. Rep. [Mich.], 946.

Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen. *Holbrook v. Aldrich,* 168 Mass., 15.

A turntable, however attractive, could not be deemed to have been created for the use which the child makes of it. This objection is not obviated by an appeal to the doctrine that children of tender years are not held to the same degree of prudence and care as adults. It is not a question of the child's negligence, but of the duty of the company. *Turess v. New York S. & W. R. Co.,* 11 Am. & Eng. R. Cas., n. s., 297, 301, 40 Atl. Rep. [N. J.], 614.

Recovery in this case is sought to be based on the prin-

ciple laid down in the case of *Sioux C. & P. R. Co. v. Stout*, 17 Wall. [U. S.], 657; and the case of *Atchison & N. R. Co. v. Bailey*, 11 Nebr., 332.

We invite the attention of the court to a reconsideration of these cases; and contend that the conclusions reached are wrong in principle, as has been held by nearly all of the courts in later decisions; and furthermore, that the principles therein laid down do not determine the liability of the railroad company in the case at bar. The question of what duty the land-owner owes to the trespassing child, has lately been passed upon in several well reasoned cases, wherein the courts repudiate the doctrine of the *Stout Case,* holding that the owner owes no active duty to care for the safety of the child trespasser, except not to hurt him wantonly or unnecessarily. The land-owner would not be permitted to purposely set a trap, intending the infliction of injury upon the trespasser, or place a gun, or some explosive, in such a position as to purposely cause injury. But the owner has the right to put upon his own land useful machinery and necessary improvements for the accomplishment of any useful purpose intended, without being liable for injuries inflicted upon the trespasser while using the same improperly. The record in this case shows, without any dispute, that the turntable was properly constructed, and was a machine suitable and necessary to the company in performing the work that had to be done in the operation of its trains and engines. It was not constructed for children to play upon. The land-owner has the right, as a necessity to civilized society and progress, to the orderly use of his own premises and of the machinery and improvements he may put thereon in order to facilitate that use. In this respect there can be no essential or necessary difference in the cornsheller, windmill or pear tree of the farmer, and the turntable of the railroad company, which are equally subjects for childish curiosity and adventure.

In the case of *Delaware I. & W. R. Co. v. Riech,* 11 Am. & Eng. R. Cases, n. s., 313, 40 Atl. Rep. [N. J.], 682,

June, 1898, the liability of the railroad company for an injury received by a child while playing on its turntable was thoroughly considered. Among other things it was held:

A land-owner is ordinarily under no obligation to a mere licensee or to a trespasser to keep his premises in a safe condition; and the fact that the licensee or the trespasser is an infant of tender years affords no reason for modifying this rule, and charging the land-owner with a duty which does not otherwise exist. When an owner of lands erects upon his premises, for their more beneficial user, a structure which happens to be attractive to children, he does not, by such action, extend an invitation to children to enter thereon. See also *Loomis v. Terry*, 17 Wend. [N. Y.], 496; *Slayton v. Fremont, E. & M. V. R. Co.*, 40 Nebr., 840; *Gay v. Essex Electric Street R. Co.*, 159 Mass., 238; *Frost v. Eastern R. Co.*, 64 N. H., 220; *Bates v. Railway Co.*, 90 Tenn., 36, 15 S. W. Rep., 1069; *St. Louis, V. & T. H. R. Co. v. Bell*, 81 Ill., 76; *Cleveland, C. & St. L. R. Co. v. Tartt*, 64 Fed. Rep., 823; *Haberlau v. Lake Shore & M. S. R. Co.*, 73 Ill. App., 261; *Rogers v. Elliott*, 146 Mass., 349.

The owner is under no duty to a mere trespasser to keep his premises safe; and the fact that the trespasser is an infant can not have the effect to raise a duty where none otherwise exists. The supposed duty has regard to the public at large, and can not well exist as to one portion of the public and not to another, under the same circumstances. In this respect children, women and men are upon the same footing. In cases where certain duties exist, infants may require greater care than adults, or a different kind of care; but precautionary measures having for their object the protection of the public must, as a rule, have reference to all classes alike. *Nolan v. New York, N. H. & H. R. Co.*, 53 Conn., 461.

A trespasser ordinarily assumes all risk of danger from the condition of the premises; and to recover for an injury happening to him he must show that it was wantonly

inflicted, or that the owner or occupant, being present and acting, might have prevented the injury by the exercise of reasonable care, after discovering the danger. *Clark v. Manchester,* 62 N. H., 577; *State v. Manchester & L. R. Co.,* 52 N. H., 528; *Sweeny v. Old Colony & N. R. Co.,* 10 Allen [Mass.], 368; *Morrissey v. Eastern R. Co.,* 126 Mass., 377; *Severy v. Nickerson,* 120 Mass., 306; *Morgan v. Hallowell,* 57 Me., 375; *Pierce v. Whitcomb,* 48 Vt., 127; *McAlpin v. Powell,* 70 N. Y., 126; *St. Louis, V. & T. H. R. Co. v. Bell,* 81 Ill., 76; *Gavin v. City of Chicago,* 97 Ill., 66; *Wood v. Indian School District,* 44 Ia., 27; *Gramlich v. Wurst,* 86 Pa. St., 74; *Cauley v. Pittsburg, C. & St. L. R. Co.,* 95 Pa. St., 398; *Gillespie v. McGowan,* 100 Pa. St., 144; *Mangan v. Atterton,* 1 Exch. [Eng.], *239.

*Matthew Gering* and *Michael O'Donohue, contra:*

This suit was brought by the father, as the next friend, for all damages resulting from the injuries inflicted, both past and future; he testified in behalf of the boy in all particulars, and verified the petition. Such conduct upon his part estops him from suing for services, and amounted in law to an emancipation of the infant.* In a case where this precise question arose, the supreme court of Michigan said:

It appears that the plaintiff in this case, as next friend of his son, Oscar, took part in the trial of the former case, and insisted upon a recovery by his son for the very damages—that is, the value of the loss of Oscar's services —which he now seeks to recover in the present case. It is undoubtedly true that as a matter of law Oscar had no right in his suit to recover such damages without the consent of his father, but he did recover with the consent of his father; therefore the father is now estopped from setting up claim for the same damages in this action in his own name. It is true that the earnings of a minor son belong to the father, unless the father has given him his time and earnings; but the father can not recover for

---

*The marriage of a master with a female slave, is ipso-facto manumission. *Pearson v. Pearson,* 51 Cal., 120.—W. F. B.

such earnings when he has emancipated him. If the case here had been for the earnings of the minor son, and it appeared that in a former action by the son—the father acting as his next friend—he had recovered the value of his wages with the consent of the father, that fact would be held tantamount to manumission of the infant, so far as that suit was concerned, and the father would be estopped from recovery of the same wages. There can be no distinction between such a case and the present; and the fact that the father appeared and prosecuted as next friend was tantamount to a relinquishment of such loss of services. The court should have admitted the evidence, and have directed the jury that no recovery could be had by the father for the loss of such services, as their value had already been recovered by the son, with the father's consent. *Baker v. Flint & P. M. R. Co.*, 91 Mich., 298.

See *Hempstead v. City of Des Moines*, 63 Ia., 36; *Fifield v. Edwards*, 39 Mich., 267; Freeman, Judgments, secs. 241-249.

When a company, through its employees and officers, has knowledge of the constant use of a footpath across its tracks, makes no objection thereto, and directs no obstructions to such use, it will be presumed to assent to it, thus giving all who use such crossing a license therefor. A person who is injured while crossing the track at such place is not a trespasser upon the railroad, but is entitled to all of the rights of one rightfully upon it, and may recover for injuries resulting from the company's want of care. *Clampit v. Chicago, St. P. & K. C. R. Co.*, 84 Ia., 71; *Philadelphia & R. R. Co. v. Troutman*, 11 W. N. Cas. [Pa.], 453.

*Deweese, Patterson* and *Bishop* in reply:

The plaintiff made a persistent but futile effort to escape the true rule of law by showing that the table was near the by-way which passed Corrigan's house over 200 feet away; that people occasionally passed this way to the cemetery; that these grounds, though a part of the switch yards, surrounded by farm lands and half a mile

from the town, were not fenced in; and with other side issues of equal indifference to the cause of action.

The child's entry upon the grounds and turntable was not over any path or public highway, or through any fence or place where fences could be made, but directly upon and over the tracks leading to the turntable 2,000 feet away.

Argued orally by *Bishop,* for plaintiff in error; by *Gering, contra.*

ALBERT, C.

This action was brought on behalf of Leo Krayenbuhl, whom we shall hereafter call the plaintiff, by his next friend, against the Chicago, Burlington & Quincy Railroad Company, to recover for personal injuries received by the plaintiff while playing on a turntable belonging to the defendant.

It sufficiently appears from the evidence that, on and prior to the 20th day of October, 1895, the defendant operated a line of railroad, which extended through the village of Palmer, at which point it maintained a passenger depot, roundhouse, coalhouse, water-tank and turntable. A few rods northwest of the depot the road branched, one branch taking a westerly and the other a northwesterly course. The turntable was situated between those two branches, at a point about 1,600 feet from the depot, and about 100 feet from each branch, and a track extended to it from the point of divergence of the two branches. A path or footway, beginning some distance northwest of the turntable, extended in a southeasterly direction, passed within about 70 feet of it, and crossed the track at the south. This path was in common use, not only by the members of the family to which the plaintiff belonged, but the public generally, and there was no fence between it and the turntable. The turntable was provided with a movable bolt, which by means of a lever could be thrown into a socket in the surrounding

64

frame work, thus holding the turntable in position. Provision was also made for locking it with a padlock. The rules of the defendant in force at the time required the foreman of the roundhouse, or in his absence the station-agent, to keep the turntable locked when not in use; but there is considerable evidence to the effect that this rule was frequently disregarded, and that, owing to the looseness of one of the staples used in connection with the lock, even when thus fastened, it could be unfastened by young children without much difficulty. The plaintiff's father was in the employ of the defendant as section-foreman, and, with his family, occupied a small house on the right of way near the station, within about 30 feet of the track, and about 1,600 feet from the turntable. Another family resided on the right of way, a few rods from the turntable. The two families visited back and forth, using the right of way for a path. The plaintiff's father kept a cow, which was pastured on the right of way, sometimes near the turntable, and it appears from the evidence that his children drove it back and forth on the right of way as occasion required. There is evidence tending to show that it was the common practice for the children of the family, and other children in the neighborhood, to resort to the coalhouse, roundhouse and turntable, and to amuse themselves by revolving the turntable, and riding on it while it was in motion, and that this practice was known to the defendant, who permitted it without protest.

On the 20th day of October, 1895, in the absence of his parents, the plaintiff,—he was then four years of age,—in company with some other members of the family, the oldest of whom was eleven years old, and some other children, the oldest of whom was fourteen, were playing with a push car, moving it up and down on the railroad track. The agent in charge of the station joined them, and rode a short distance on the car. He then left them, and went to his rooms in the station. The children continued to push the car, and finally reached the turntable. There

is evidence sufficient to sustain a finding that they found the turntable unlocked and unguarded, but the evidence is conflicting on that point. The plaintiff and some of the other children got on the turntable, while two of the others set it in motion. While it was in motion the plaintiff's foot was caught between the rails, and severed at the ankle joint. The injury thus sustained is that for which damages is sought in this action. A trial was had to a jury, which resulted in a verdict and judgment for the plaintiff.* The defendant brings error.

The first question raised is, that the petition does not state facts sufficient to constitute a cause of action. The grounds of this objection, as stated in the defendant's brief, are as follows:

"It does not allege the authority of any agent of the defendant to invite the plaintiff upon its turntable, or any facts which constitute such express invitation. It does not allege the characteristics either of location or construction of the table, which of themselves render the table an invitation to the danger." The petition is too long to set out at length. We think it will suffice to say that the allegations in these respects are, that the plaintiff was induced by other small children, with the knowledge and consent of the defendant, its agents and servants, and by the invitation of the defendant, to come to and about the turntable. On the face of the petition, this is an allegation of an invitation by the defendant. If the plaintiff were invited ,by the defendant, he was invited by some agent of the defendant, having authority in the premises. The allegation in that regard is sufficient. It is true the facts constituting such invitation are not set forth, nor do we deem it necessary that they should be for the purposes of the objection under consideration, which was first made by an objection to the introduction of any testimony, on the ground that the facts stated in the petition did not constitute a cause of action.

---

* Upon a second trial, plaintiff recovered for $18,000; trial judge remitted $6,000, this court $3,000 more; opinion filed January 21, 1904.—W. F. B.

The question to which counsel have directed the greater portion of their arguments is, whether the facts in this case are sufficient to sustain the verdict. On this question we· have been favored with an exhaustive discussion of what is commonly known as the doctrine of the turntable cases, which applied to the facts in this case, would sustain the verdict. The leading case in support of this doctrine is *Sioux C.. & P. R. Co. v. Stout,* 17 Wall. [U. S.], 657. The doctrine was reaffirmed by the same court in *Union P. R. Co. v. McDonald,* 152 U. S., 262, and was expressly approved by this court in *Atchison & N. R. Co. v. Bailey,* 11 Nebr., 332, 336, and was approved and applied in the following among other cases: *Barrett v. Southern P. R. Co.,* 91 Cal., 296; *Keffe v. Milwaukee & St. P. R. Co.,* 21 Minn., 207; *Twist v. Winona & St. P. R. Co.,*\* 37 Am. & Eng. R. Cas. [Minn.], 336, 338; *Kansas C. R. Co. v. Fitzsimmons,* 22 Kan., 686; *Ilwaco R.. & N. Co. v. Hedrick,* 1 Wash., 446, 25 Pac. Rep., 335, 22 Am. St. Rep., 169; *San Antonio & A. P. R. Co. v. Skidmore,* 65 S. W. Rep. [Tex.], 215; *Gulf C. & S. F. R. Co. v. McWhirter,* 77 Tex., 356; *Harriman v. Pittsburgh, C. & St. L. R. Co.,* 45 Ohio St., 11; *Ferguson v. Columbus & R. R. Co.,* 75 Ga., 637; *Nagel v. Missouri P. R. Co.,* 75 Mo., 653, 42 Am. Rep., 418.

The doctrine, as we gather it from the cases cited, is that where a turntable is so situated that its owner may reasonably expect that children too young to appreciate the danger will resort to it, and amuse themselves by using it, it is guilty of negligence for a failure to take reasonable precautions to prevent such use. It has not been permitted to pass as law unchallenged. On the contrary, it has been expressly repudiated in many cases, among which are the following: *Walsh v. Fitchburg R. Co.,*† 39 N. E. Rep. [N. Y.], 1068; *Daniels v. New York & N. E. R. Co.,* 154 Mass., 349; *Frost v. Eastern R. Co.,* 64 N. H., 220; *Delaware L. & W. R. Co. v. Reich,* 40 Atl. Rep. [N. J.], 682, 41 L. R. A., 831. It has been criticised in others,

---

\*39 Minn., 164, 39 N. W. Rep., 402, 12 Am. St. Rep., 626.
†27 L. R. A., 724, 45 Am. St. Rep., 615.

among which are *Ryan v. Towar,* 87 N. W. Rep. [Mich.], 644, and *Dobbins v. Missouri, K. & T. R. Co.,* 41 S. W. Rep. [Tex.], 62. The latter case would seem to throw some doubt on the position of the courts of Texas in regard to the doctrine in question, but the case of *San Antonio & A. P. R. Co. v. Skidmore, supra,* appears to be the latest expression of the court on the question.

The defendant insists that the doctrine is unsound, and asks that it be repudiated by the court, and that the case of *Atchison & N. R. Co. v. Bailey, supra,* be overruled. The argument in this behalf rests on the proposition that the owner of dangerous premises owes no active duty to trespassing children. The assumption that the plaintiff was a trespasser, might well be questioned. The right of way was his home and playground; it was where his father performed his daily labors; it was used as a path, and for other purposes by the family. But, as the duty of the owner of dangerous premises to infant trespassers is raised by other assignments, it will shorten this opinion to allow the assumption to pass unchallenged. The proposition is not universally true, as is clearly shown, we think, by SEDGWICK, C., in *Tucker v. Draper,* 62 Nebr., 66, wherein he says: "There may be, and often are, circumstances under which one owes some active duty to a trespasser upon his premises. If a man wilfully lies down upon a railroad track the engineer must not wantonly run his engine over him. One may not set a snare or spring-gun for trespassers, and, knowing that some stranger had placed the snare or spring-gun, if he wantonly allows it to remain he will be responsible for the consequences. A well may be so contrived as to act as a dangerous trap, and one who allows it so to remain upon his premises will, under some circumstances, be liable. If adults, or children of such age as to ordinarily be capable of discerning and avoiding danger are injured while trespassing upon the premises of another, they may be without remedy, while under similar circumstances children of three or four years of age would be protected. If I know

that there is an open well upon my premises and know that children of such tender years as to have no notion of their danger are continually playing around it and I can obviate the danger with very little trouble to myself and without injuring the premises or interfering with my own free use thereof, I owe an active duty to those children, and if I neglect that duty and they fall into the well and are killed it is through my negligence. I can not urge their negligence as a defense, even though I have never invited or encouraged them expressly or impliedly to go upon the premises."

The language amounts to a reaffirmance of the doctrine of the turntable cases, and, to our minds, suggests the true principle upon which cases of this character rest; that is, that where the owner of dangerous premises knows, or has good reason to believe, that children, so young as to be ignorant of the danger, will resort to such premises he is bound to take such precautions to keep them from such premises, or to protect them from injuries likely to result from the dangerous condition of the premises while there, as a man of ordinary care and prudence, under like circumstances, would take. At first sight, it would seem that the principle, thus stated, is too broad, and that its application would impose unreasonable burdens on owners, and intolerable restrictions on the use and enjoyment of property. But it must be kept in mind that it requires nothing of the owner that a man of ordinary care and prudence would not do, of his own volition, under like circumstances. Such a man would not willingly take up unreasonable burdens, nor vex himself with intolerable restrictions.

It is true, as said in *Loomis v. Terry,* 17 Wend. [N. Y.], 496, 500, 31 Am. Dec., 306, "the business of life must go forward"; the means by which it is carried forward can not be rendered absolutely safe. Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore, the law favors such use to the fullest extent consistent with the main purpose for which,

from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. The business of life is better carried forward by the use of dangerous machinery; hence the public good demands its use, although occasionally such use results in the loss of life or limb. It does so because the danger is insignificant, when weighed against the benefits resulting from the use of such machinery, and for the same reason demands its reasonable, most effective and unrestricted use, up to the point where the benefits resulting from such use no longer outweigh the danger to be anticipated from it. At that point the public good demands restrictions. For example, a turntable is a dangerous contrivance, which facilitates railroading; the general benefits resulting from its use outweigh the occasional injuries inflicted by it; hence the public good demands its use. We may conceive of means by which it might be rendered absolutely safe, but such means would so interfere with its beneficial use that the danger to be anticipated would not justify their adoption; therefore the public good demands its use without them. But the danger incident to its use may be lessened by the use of a lock which would prevent children, attracted to it, from moving it; the interference with the proper use of the turntable occasioned by the use of such lock is so slight that it is outweighed by the danger to be anticipated from an omission to use it; therefore the public good, we think, demands the use of the lock. The public good would not require the owner of a vacant lot on which there is a pond to fill up the pond or enclose the lot with an impassible wall to insure the safety of children resorting to it, because the burden

of doing so is out of all proportion to the danger to be anticipated from leaving it undone. *Richards v. Connell*, 45 Nebr., 467. But where there is an open well on a vacant lot, which is frequented by children, of which the owner of the lot has knowledge, he is liable for injuries sustained by children falling into the well, because the danger to be anticipated from the open well, under the circumstances, outweighs the slight expense or inconvenience that would be entailed in making it safe. *Tucker v. Draper, supra.*

Hence, in all cases of this kind, in the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises. The nature of the precautions would depend on the particular facts in each case. In some cases, a warning to the children or the parents might be sufficient; in others, more active measures might be required. But in every case they should be such as a man of ordinary care and prudence would observe under like circumstances. If, under all the circumstances, the owner omits such precautions as a man of ordinary care and prudence, under like circumstances, would observe, he is guilty of negligence. We are fully satisfied that the principle under consideration is sound, and that its application would not operate oppressively on the owner. We see no good reason for receding from the position already taken by this court in cases of this character.

The defendant tendered the following instruction: "The jury are instructed that in this case the plaintiff claims in substance that the railroad company was negligent in the manner in which it kept and used the turntable by which the plaintiff was injured; and that the turntable in question was a machine that was naturally enticing to children, and that children were tempted to play on and about this turntable. On this point the

court instructs you that the law is that the railroad company has the right to the exclusive use of its own grounds and turntable and other machinery the same as any other person has the exclusive right and use of his own property and premises; and that the company was under no obligations to keep its turntable in such a condition that it would be safe and convenient for children to play upon, and to use as a plaything. And the court instructs you that the defendant was under no obligation to keep a watchman at and about said turntable for the purpose of excluding children therefrom; that the company was only required to exercise reasonable care in the placing and using of said turntable, and have the same fitted with such appliances as would make it reasonably safe and convenient for the purpose for which it was intended." The court refused the instruction as tendered, and modified it by omitting the concluding clause and inserting instead the following: "But the company was required to exercise reasonable care in the placing and fastening of the turntable and having the same fitted with such appliances as would make it reasonably safe in the situation where it was placed under the circumstances, as disclosed in this case.". The instruction as thus modified was given. The complaint of the refusal of the court to give the instruction as tendered, is covered by what has been said on the sufficiency of the facts to sustain the verdict. But the defendant insists that the instruction as modified is erroneous, in that it submitted to the jury the proper construction and location of the turntable. Taking the instruction as a whole, we do not think it admits of that construction. The opening sentence informs the jury of the nature of the plaintiff's claim; that such claim is that the defendant "was negligent in the manner in which it kept and used the turntable by which the plaintiff was injured." In paragraph 7 of the instructions the jury were told that the action rests on the alleged negligence of the defendant in not keeping the turntable guarded, locked or properly fastend. In

the 15th paragraph they were told, that the defendant
"had a right to have and use the turntable in the carrying
on of its business as a railroad company." The rejected
clause of the instruction under consideration, as tendered
by the defendant, uses the word "placing," the only word
used in the substituted clause that could be construed
as a reference to the location or construction of the turn-
table. From these considerations, we think the clause
complained of has no reference to the location nor original
construction of the turntable, but refers rather to the
condition in which it was to be kept or left when not in use.
In the light of the entire charge, the jury could hardly
have understood it to refer to the location or construction
of the turntable.

Another instruction, tendered by the defendant, is as
follows: "If the jury find from the evidence that the
turntable in question was a ponderous and powerful
machine when set in motion, and that according to its
mechanism it would turn easily, and when turned, even
for a small space, it would accumulate a force of momen-
tum of great power, and if you further find that the young
people and children meddling with said turntable at
the time of the injury complained of worked upon the
levers of said machine back and forth through a 'small
space in which the turntable could be moved, even when
the fastenings were in proper place and held the machine;
and that by the motion and momentum of the machine set
in motion by these young people at the levers the fasten-
ings became loosened so as to permit the turntable to
go around, then you are instructed that under this state
of facts the plaintiff could not recover and your verdict
should be for the defendant." It was refused, and its
refusal is now assigned as error. The instruction entirely
omits the question of due care. There was evidence to
the effect that the lock used for the turntable, was little,
if any, obstacle to the use of the turntable by children,
because one of the staples was loose, and could be easily
removed. The instruction, if given, would have justified

a finding of due care, however carelessly the turntable was fastened. That would have been erroneous. The instruction, in our opinion, was properly refused.

The court on its own motion gave the following instruction as part of the charge to the jury: "But if you find from a preponderance of the evidence that the turntable in question was a dangerous machine and the defendants did know, or had reason to believe, under the circumstances of the case, the children of the place would resort to the turntable to play, and that if they did, they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accident, this would be evidence of negligence, and would be answerable for damages caused thereby to the children of tender years and who did not possess sufficient knowledge or understanding to know the danger or dangerous character of such turntable; however the defendants are not insurers of the limbs of those, whether adults or children, who may resort to their grounds and there are many injuries, continually happening, which involve no pecuniary liability to any one." The defendant contends that there is no evidence to support the hypothesis that the defendant took no means to keep the children away, and no means to prevent the accident. The evidence of at least one of the children who was present at the time of the accident, and who assisted in revolving the turntable at the time, is to the effect that it was not locked, but yielded at once to their efforts to move it. There is other evidence to the same effect. Another witness testifies that it was never locked. As to the means taken to keep the children from the turntable, a considerable portion of the testimony offered on behalf of the plaintiff, tends to show that no such means were taken. The defendant contends that the location of the turntable, at a distance from the town, was, in itself, a means of protection. But the instruction has reference to circumstances as they existed at the time of the accident. The location of the turntable, as a means of protection, is important only as

tending to show the improbability of children resorting to it, and that the defendant could not reasonably be expected to anticipate that they would do so. It becomes immaterial when, according to the hypothesis, the defendant knew, or had good reason to believe, that children would resort to the turntable and be injured by it. The instruction, we think, finds ample basis in the evidence.

Another criticism urged against this instruction is that it invades the province of the jury, in that it charges that if the defendant, under the circumstances stated, took no means to keep the children away, and no means to prevent the accident, it would be answerable in damages. The defendant insists that the question of negligence was one for the jury, and that it was not within the province of the court to say, in effect, that a certain state of facts constituted negligence. We are inclined to think this criticism is just. From the wording of the instruction, the jury could hardly draw any other conclusion than that if they found the facts specifically stated therein, the verdict should be for the plaintiff; in other words, that such facts were to be considered by them, not only as evidence of negligence, but as negligence *per se*. It has been repeatedly held by this court that it is erroneous to single out and state a group of facts, and inform the jury that if such facts are found it establishes the existence of negligence. The question of negligence is seldom one of law, and the facts enumerated in the instruction should have been considered by the jury as evidence of negligence, to be considered in the light of all the other facts and circumstances shown in evidence. To thus single out and state a group of facts has been held by this court to amount to an improper comment on questions of fact by the court. We think the instruction was erroneous, and that the following cases support that view: *Missouri P. R. Co. v. Baier*, 37 Nebr., 235; *Omaha & R. V. R. Co. v. Morgan*, 40 Nebr., 604; *Chicago, B. & Q. R. Co. v. Oleson*, 40 Nebr., 889; *Village of Culbertson v. Holliday*, 50 Nebr., 229.

The nineteenth and twentieth paragraphs of the charge to the jury relate to the measure of damages, and are as follows:

"19.  The jury are instructed, if, from the evidence in the case, and under the instructions of the court, the jury shall find the issues for the plaintiff, and that the plaintiff has sustained damages, as charged in the declaration, then, to enable the jury to estimate the amount of such damages, it is not necessary that any witness should have expressed an opinion as to the amount of such damage, but the jury may themselves make such estimate from the facts and circumstances in proof, and by considering them in connection with their own knowledge, observation and experience in the business affairs of life.

"20.  The jury are instructed that if [from] the evidence in the case, and under the instructions of the court, they find the issue in favor of the plaintiff, and that the plaintiff has sustained damages, as charged in the petition, then in assessing such damages they should take into consideration the age, expectancy of life of the plaintiff, his inability to labor as shown by the evidence, his mental anguish and bodily pain, if any has been shown, and whether or not the injury to the plaintiff is permanent. You should take all these elements into consideration and allow him such a sum as will be fair and just compensation for the injuries sustained, not exceeding the sum of $25,000; but you can not allow him exemplary damages, that is,—damages by way of punishment of the defendants."

One objection urged against these instructions is that the jury were required to consider the facts and circumstances in evidence, "in connection with their own knowledge, observation and experience in the business affairs of life." It is not only proper, but necessary, that, in arriving at a verdict, the jury should make use of such knowledge as they possess in common with other men. But the instruction imposes no such limitation. We think the jury might have fairly inferred from it that they were

required to bring to bear any special knowledge which they might have on the subject, or the result of their observations and experience in like cases, which would be manifestly improper.

Another objection to the instructions in this behalf is, that the jury were required to take into account the plaintiff's inability to labor as an element of damage. The defendant insists that as the plaintiff is a minor, in the custody of his father, who is charged with his support and entitled to his earnings during minority, his inability to labor during his minority is not a proper element of damage in this case. The case of *Gulf, C. & S. F. R. Co. v. Johnson*, 11 Am. & Eng. R. Cas., n. s., 291, was an action for personal injuries to an infant, and an instruction not different in principle from those complained of, was held reversible error for the reasons now urged by the defendant. The same principle was involved in an instruction considered in *Decker v. McSorley*, 86 N. W. Rep. [Wis.], 554. The instruction was condemned.

A further objection is urged against these instructions, and that is that they instruct the jury that the damages shall not exceed $25,000. The defendant insists that an intimation was thereby conveyed to the jury that they might allow that sum, and that such intimation was prejudicial to the defendant. No authorities are cited in support of this objection, nor are we aware that any exist. It is not unusual for courts to instruct the jury as to the limit of damages allowable under the pleadings in the case. As a matter of practice, we believe it should be omitted. If the damages awarded exceed the amount allowable, the remedy is simple. We believe that most lawyers will agree with us that the intimation conveyed to the jury by such a statement is dangerous to the defendant. We do not go to the extent of saying that it would constitute reversible error, but we believe the practice should be discountenanced.

In the course of the trial, the court permitted the plaintiff to introduce in evidence a certain printed rule of the

defendant which provided that turntables should be kept locked when not in use, and that it was the duty of agents at stations where there was no engine-house foreman to see that such turntables were locked after being used. Parol testimony was admitted to the same effect. It also admitted evidence to the effect that immediately after the accident the station-agent went to the turntable and locked it. The defendant insists that the admission of this evidence was error. We do not think so. It was necessary to bring home to the defendant knowledge that children were likely to resort to the turntable. There is evidence tending to show that both employees mentioned in the rule introduced in evidence had knowledge of such fact, and the rule, taken in connection with the evidence to their relations to the defendant, tends to bring such knowledge home to the defendant. That the agent locked the turntable immediately after the accident, had a bearing on the question of whether the turntable was locked before the accident, which was one of the issues in the case.

Another witness was permitted to testify that he went to the turntable after the accident, on the same day, and found the table unlocked. The defendant argues that it was not admissible to show the condition of the table after the accident occurred. This evidence, we think, is also admissible, as tending to show that the children found the turntable unlocked before the accident occurred.

Objection is also made to the admission of evidence of testimony to the effect that the roadmaster, or division superintendent, which one is not stated, was at the turntable after the accident,—how long after does not appear. The object of this evidence is not clear, nor are we able to see how it had any influence on the verdict one way or another. The objection that it was immaterial appears to be well founded, but we can not see that its admission would constitute reversible error.

The defendant complains of the admission of testimony to the effect that the station-agent on the day of the ac-

cident met the children, who were playing with the push-car, rode a short distance on the push-car, and said nothing to the children about playing with it. The ground of this complaint appears to be that playing with the push-car, when the agent saw them and took part in the sport, and playing on the turntable, some 500 yards distant, were independent transactions, and the agent could not reasonably anticipate that they would go to the turntable from the place he left them, and therefore was not required to warn them of its danger. It seems to us that the station grounds as a whole were dangerous premises, especially for children of that age. The turntable was only one of its many dangers. The evid..ce objected to, it seems to us, was competent to show that the defendant had knowledge that children frequented these dangerous premises, and that they did so with its knowledge and consent. We think there was no error in the admission of this testimony.

Certain impeaching questions were addressed to one of the defendant's witnesses, which were objected to by the defendant on the ground, among others, that no foundation had been laid. Before the questions were asked, the defendant's attention was directed to the time and place where the contradictory statements were made, and to the persons in whose presence they were made. Taken in connection with his testimony on direct examination, the witness could not fail to understand to what the questions related. We think the foundation was sufficient, and that his answers, some of them showing that he had made contradictory statements, were properly admitted.

We recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and

the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

NOTE.—*Trespasser.—Licensee.—Spring-Gun Cases.*—Where the plaintiff has voluntarily put himself in the way of risk, the defendant is not bound to disprove negligence. Pollock, Torts, pp. 161, 162. One who trespasses in a wood, having notice that spring-guns are set there, and is shot by a spring-gun, can not recover. *Ilott v. Wilks* (1820), 3 B. & Ald. [Eng.], 304.

The defendant, for the protection of property, some of which had been stolen, set a spring-gun, without notice, in a walled garden, at a distance from his house; the plaintiff, who climbed over the wall in pursuit of a stray fowl, having been shot, *held*, that the defendant was liable in damages. *Bird v. Holbrook*, 4 Bingham [Eng.], *628.

In the last case cited Wilde, Sergt., for plaintiff argued that since the defendant could not have justified shooting the plaintiff with his own hand,—it being a case of mere trespass,—even after warning, he could not justify shooting him with a spring-gun. In *Bird v. Holbrook* the court thought their decision in harmony with the principles laid down in *Ilott v. Wilks, supra.*

The facts in the *Bird Case* were as follows: Holbrook rented and occupied a walled garden in the parish of St. Philip and Jacob, in the county of Gloucester, in which the defendant grew valuable flower-roots, and particularly tulips, of the choicest and most expensive description. The garden was at near the distance of a mile from the domicile of Holbrook, and above one hundred yards from the highway. In the garden was a summer-house, consisting of a single room, in which Holbrook and his wife had slept, some considerable time before, and intended to have slept, in a few days after the accident, for the better protection of their property. The garden was surrounded by a wall, by which it was separated on the south from a footway up to some houses, on the east and west from other gardens, and on the north from a field which had no path through it, and was itself fenced against the highway, at a considerable distance from the garden, by a wall. On the north side of the garden, the wall adjoining the field was seven or eight feet high. The other walls were somewhat lower. The garden was entered by a door in the wall. Holbrook had, shortly before the accident, been robbed of flowers to the value of 20l. and upwards, in consequence of which, with the aid of an assistant, he placed a spring-gun in the garden, for the protection of his property. The wires of this gun were made to pass from the door of the summer-house to some tulip beds, at the height of about fifteen inches from the ground, and cross three or four of the garden paths, which wires were visible from all parts of the garden or the garden wall; but it was admitted by defendant that plaintiff had not seen them, and that he had no notice of the spring-gun and wires being there; and that the plaintiff

**65**

had gone into the garden for an innocent purpose, to get back a pea-fowl that had strayed.

The details of plaintiff's entry of the garden were as follows: On March 21, 1825, between the hours of six and seven in the afternoon, it being then light, a pea-hen belonging to the occupier of a house in the neighborhood had escaped, and, after flying across the field before mentioned, alighted in defendant Holbrook's garden. A female servant of the owner of the bird was in pursuit of it, and the plaintiff (a youth of the age of nineteen years) seeing her in distress from fear of losing the bird, said he would go after it for her; he, accordingly, got upon the garden wall at the back of the garden next to the field. After calling out two or three times and waiting to see if any person was in the garden, he jumped down on the garden side of the wall. The bird took shelter near the summer-house. The boy's foot hit one of the wires near where the gun was set, and he received a large part of its contents, consisting of swan shot, in and about the knee-joint. There was an agreed verdict of 50*l.* for plaintiff, subject to a case reversed, with liberty to either party to turn it into a special verdict. William Draper Best (Baron Wynford), C. J., in his opinion, contrasted the case at bar with the case of a furious bull which was necessary for the renewal of his species and must be kept somewhere. The proximity of a foot-path might determine the liability. This case was also contrasted with an action for injury from a dog following his instincts in pursuit of game in a forest where his master had equal rights with the injured party. A distinction—not so easy to master—was shown between this case and the case of a horse falling into a pit dug on a common.

His lordship put his last opinion upon the following ground:

"But we want no authority in a case like the present; we put it on the principle that it is inhuman to catch a man by means which may maim him or endanger his life; and, as far as human means can go, it is the object of the English law to uphold humanity, and the sanctions of religion. It would be, indeed, a subject of regret, if a party were liable in damages, instead of giving notice of the employment of a destructive engine, or removing it, at least, during the day, expressed a resolution to withhold notice, lest, by affording it, he should fail to entrap his victim." P. *643.

Defendant Holbrook had stated to a witness that he did not conceive that there was any law requiring him to give notice, and requested the witness not to mention that the gun was set, lest the villain should no♦ be detected.

The case of *Ilott v. Wilks* is reviewed by Sydney Smith in the Edinburgh Review, vol. XXXV, pp. 123-134. The writer severely scores Judge Best's opinion in that case. This article was written in 1821. The opinion in *Bird v. Holbrook* was written seven years thereafter. It is interesting to read the two opinions and the article together. See, also, same volume of Edinburgh Review for review of *Ilott v. Wilks*, at pp. 410-421.—W. F. B.