## CHICAGO & ERIE RAILROAD COMPANY v. FOX.

[No. 4,649.   Filed February 18, 1904.   Rehearing denied April 20, 1904.   Transfer denied June 7, 1906.]

1. RAILROADS.—*Negligence.—Turntables.*—A railroad company may be guilty of negligence toward a child in leaving unguarded and unlocked its turntable.  p. 273.

2. SAME. — *Negligence. — Turntables. — Implied Invitation.* — A railroad company, leaving its turntable open and unfastened, may be guilty of negligence toward a child by reason of an implied, though unintentional, invitation to use same.   p. 275.

3. SAME.—*Use of Property.—Maxims.*—The maxim, "So use your own as not to injure another," is applicable to a railroad company's leaving open and unfastened a turntable where children are in the habit of congregating for play.   p. 276.

4. RAILROADS.—*Turntables.*—*Care Required.*—*Question for Jury.* —Ordinary care is required from a railroad company in the prevention of injuries to children who may thoughtlessly use its turntable, such question being usually for the jury. p. 277.

From Porter Circuit Court; *Willis C. McMahan,* Judge.

Action by Edward L. Fox, by his next friend, against the Chicago & Erie Railroad Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Affirmed.*

*W. O. Johnston* and *Johnston, Bartholomew & Bartholomew,* for appellant.

*L. L. Bomberger, D. E. Kelly* and *William J. Whinery,* for appellee.

BLACK, J.—The appellee, an infant, suing by his next friend, recovered a judgment against the appellant for a personal injury. At the time of the injury, and for many years before, the appellant owned and maintained, at the city of Hammond, railroad yards, side-tracks, switches, a roundhouse and a turntable, in the southern part of the city. The tracks of the appellant's railroad ran nearly north and south, and the tracks of the Monon railway company, west of the appellant's grounds, and running nearly parallel with the appellant's tracks, were graded up between two and three feet. Douglass street crossed these tracks about two thousand feet north of the turntable, and bounded appellant's yards on the north. About thirty-six hundred feet south of the turntable another street, crossing the tracks, bounded the appellant's yards on the south. The east side of Harrison park, a public park of the city, was west of the Monon tracks, and about three hundred feet from the turntable, which was situated in the western part of appellant's yards, in front of the roundhouse. Webb street, running east and west, ran along the north side of Harrison park, and terminated at the west side of the Monon tracks, nearly opposite the roundhouse and turntable,

while from that terminal point Park avenue extended
northward along the west side of the Monon tracks.

The southern portion of the appellant's grounds was en-
closed by a wire fence, which ran east and west, passing
about three feet south of the roundhouse. A beaten path
ran from the Monon railway, at a point about sixty feet
south of Webb street, eastward between the wire fence and
the roundhouse, and thence northeastward to the turntable,
in front of the roundhouse, and about one hundred eighty
feet east of it. The grounds in which the roundhouse and
the turntable were situated were unenclosed. A short dis-
tance north of the turntable was a large excavation on the
appellant's grounds, filled with water and used as a swim-
ming pool. The roundhouse was in a dilapidated condition,
and was not used by the appellant; but the turntable was
occasionally used for turning locomotives, which were
brought upon it by a track which approached from the
north, and connected with the track upon the turntable.
Harrison park, containing twenty-five or thirty acres, was
resorted to for picnicing and general outing in summer, and
for skating and coasting in winter. Carroll street, one
square north of Webb street, and parallel with it, extended
eastward to the Monon railway. There was a path extend-
ing from Webb street across the Monon railway to the west
wall of the roundhouse, and thence around its north side to
the north side of the turntable. Opposite the east end of
an alley which ran east and west between Carroll and Webb
streets, another path extended southeastward, passing the
north side of the roundhouse, to the turntable. There was
also a path from Williams street, one square north of Carroll
street, which ran southeastward to the Monon tracks, and
thence around the north side of the swimming hole. All
these paths united with a path running along the tracks of
the appellant. The turntable had an iron frame fifty-eight
feet in diameter, and turned on a pivot, above an excavation
eighteen inches in depth, and was supported at the circum-

ference by wheels which ran on a track extending around the excavation. The frame was floored over, and had a track of two rails, and two handles at opposite sides for turning the table. It was used for turning freight engines, mostly, sometimes three or four times a day, and sometimes once or twice a week. The rails of the track upon the turntable and those of the side-track connected with the table came close together when opposite to each other. The roundhouse and the turntable could be seen from the park, and were within six hundred feet of the nearest dwelling-house. The turntable was permitted by the appellant to remain unfastened. The roundhouse and the turntable were frequently resorted to as playing places by the children of the city, and they had been so used for a number of years before the appellee's injury. The railroad grounds and tracks in the vicinity of the turntable were traversed daily by large numbers of people going to and from their work, and were frequented by children who played in Harrison park, especially when they were attending picnics. Appellant's employes and its man in charge of the roundhouse and turntable frequently had seen children playing on the turntable, and such employes had more than once turned the table for children to ride on it, and had given children permission to turn the table, provided they would restore it to its former position. Appellant's agent in charge of its yards and tracks at Hammond knew that children frequented the turntable; but the employes of the appellant had never driven children away from the turntable, or forbidden them to use it or to ride upon it, or taken any active measures to prevent them from using it. On two occasions before the injury of appellee, children six or seven years old had been injured while playing on the turntable, and one of appellant's employes had carried away from the turntable a child injured there.

The appellee, who was a boy not quite six and one-half years old, resided with his parents on Douglass street.

With the knowledge and consent of his father, he left his home after noon on Sunday, December 1, 1901, to go about five blocks, to visit some boy friends residing at the corner of Webb street and Homan street, which ran north and south along the west side of Harrison park. He had often before been at the home of these friends, having lived in their neighborhood, and having been in the habit of playing with them. He afterward went across the street into Harrison park, and across the park to the Monon tracks, at a point south of the turntable, seeking his brother and another boy. There he met two boys about thirteen years old, going north along the Monon railway, and, at their suggestion, walked with them northward toward his home along that railroad. When they came to a point on the railroad opposite the turntable, and not on the appellant's grounds, the appellee noticed the turntable, and asked the other boys to go with him to it and give him a ride on it, which they did, going eastward along the path which ran between the wire fence and the roundhouse. The appellee had ridden on the turntable before. The appellee sat down on the west side of the turntable, and the other two boys moved it around by pushing upon its handles. The turntable was not fastened, but was open, the track thereon extending east and west. When the appellee, thus situated, had ridden about one-fourth of the way around, and had arrived at one of the rails of the track for the passage of locomotives on to and off of the turntable, the rails of which projected over the brink of the excavation so as to meet the rails of the track upon the turntable, the appellee was caught by the projecting rail, and his left leg was torn and crushed, the bones thereof being broken, and his right leg was severely lacerated. He was carried home by the other two boys, and thence he was removed to a hospital, where, after some weeks of nursing, his left leg was amputated.

As the case is presented by counsel, no matter for decision is before us, except the question as to the duty of the appel-

lant toward the appellee with respect to the turntable, taking into consideration all the facts of the case. Assuming that a railroad company is under no obligation to lock or otherwise fasten or render immovable or to guard its turntable, so situated, when not in use for the purpose for which it was constructed and maintained, so as to prevent a like injury under like circumstances to a person capable of appreciating the danger, it does not necessarily follow that no such obligation exists with reference to a child, who, because of its immaturity and consequent want of reason and judgment, is not chargeable with negligence, or is capable of only a small degree of care for its own safety.

In *Lynch* v. *Nurdin* (1841), 1 Q. B. \*29, the defendant's cart, in charge of his servant, having been left standing unattended, in a street, where there were a number of children playing, while the cartman went into a house, the plaintiff, under seven years of age, climbed upon the cart. Another boy led the horse a few steps, the plaintiff fell off, and, the wheel running over him, his leg was thereby broken. The defendant was found liable, and, although it was considered that the plaintiff was a trespasser, and contributed to his injury by his own action, it was held that the trial judge properly left to the jury whether the defendant's conduct was negligent, and whether the negligence caused the injury. In the course of his opinion, Lord Denman, C. J., observed, that if it were probable that "large parties of young children might be reasonably expected to resort to the spot, \* \* \* it would be hard to say that a case of gross negligence was not fully established. But the question remains, can the plaintiff then, consistently with the authorities, maintain his action, having been at least equally in fault. The answer is that, supposing that fact ascertained by the jury, but to this extent, that he merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we

think that the defendant cannot be permitted to avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child with yielding to that temptation. He has been the real and only cause of the mischief. He has been deficient in ordinary care; the child, acting without prudence or thought, has, however, shown these qualities in as great a degree as he could be expected to possess them."

In *Binford* v. *Johnston* (1882), 82 Ind. 426, 42 Am. Rep. 508, the defendant had sold pistol cartridges to two brothers aged ten and twelve years, respectively, and a toy pistol loaded with one of the cartridges was left by these boys lying on the floor of their home. The pistol having been taken up by another brother, aged six, and discharged, the ball struck and fatally wounded one of the two boys who purchased the cartridges. In the discussion of the case, the Supreme Court cited *Lynch* v. *Nurdin, supra,* with approval.

In *Indianapolis, etc., R. Co.* v. *Pitzer* (1887), 109 Ind. 179, 58 Am. Rep. 387, the court, after saying that intruders, whether infants or adults, cannot, as a general rule, impose any duties upon the person on whose property they intrude, and citing thereto a number of cases, said further: "These cases are to be discriminated from those in which one places dangerous agencies where trespassing children are likely to be injured by them; for here the company did what it was perfectly lawful for it to do, and that was to run a passenger-train in the manner in which such trains are usually managed. The class of cases to which we refer, although numerous, have no application here." Citing a number of cases, among them *Lynch* v. *Nurdin, supra,* and *Binford* v. *Johnston, supra.* And the court went on to say: "The cases last cited all recognize the rule that children of tender years are not to be treated as persons of mature years. This is a reasonable and humane rule, and any other would be a cruel reproach to the law." See Beach, Contrib. Neg.

(3d ed.), §§137, 140; *Birge* v. *Gardner* (1849), 19 Conn. 507, 50 Am. Dec. 261, cited in *Indianapolis, etc., R. Co.* v. *Pitzer, supra. Sioux City, etc., R. Co.* v. *Stout* (1873), 17 Wall. 657, 21 L. Ed. 745, also cited in *Indianapolis, etc., R. Co.* v. *Pitzer, supra,* was like the case at bar, and there, as here, the defendant rested its defense on the ground that the company was not negligent. The court approved an instruction which submitted that question to the jury. See *Stout* v. *Sioux City, etc., R. Co.* (1872), 2 Dill. 294, Fed. Cas. No. 13,504; *Union Pac. R. Co.* v. *McDonald* (1894), 152 U. S. 262, 270, 14 Sup. Ct. 619, 38 L. Ed. 434; Beach, Contrib. Neg. (3d ed.), §207.

The duty of the defendant in such cases may be based upon what we, perhaps, may call one species of implied invitation, not involving the actual intention or wish 2. of the defendant that the plaintiff should come upon the defendant's premises or do the act which results in his injury, but consisting in leaving a thing exposed and unguarded which is of such nature as to tempt and allure young children or others not *sui juris* to play with it or otherwise use it, at a place where, within the knowledge of the defendant, such incompetent persons assemble or are likely to do so, the injurious thing being such that the defendant may enjoy the use of such property for the purpose to which it is adapted and for which it is intended, without leaving it in a condition thus dangerous to such persons, but at slight expense may so secure it, when not in such use, that it will not be thus dangerous. The so-called invitation, or tortious allurement, which would be a violation of duty, will not be involved where the defendant cannot carry on his lawful business or pursuit in the necessary and ordinary manner, and at the same time take precautions to prevent injury to such incompetent persons through the indulgence of their natural instinct to seek enjoyment or diversion; in which case, the injury being attributable, not to the fault of the injured person, but rather to the indulgence of an

innocent instinct, no blame is attached to the defendant. Thus, for instance, would be the case of the intrusion of a child upon a railway train during its temporary stoppage at a station, for the discharge and the reception of passengers, where the child enters the car along with other persons. In such case the railway company does nothing not incident to the usual and necessary way of conducting its lawful business. So might be the case of a child jumping upon the steps of a moving railway train. But a turntable, not constantly, but only occasionally, used to change the direction of locomotive engines, may, without undue interference with the company's full enjoyment thereof, be securely fastened, when not in use, without great expense or inconvenience; and such precaution may even tend to the preservation of the property itself, which, however, would be a matter within its own discretion. To take such precautions that others shall not use the appliance is not injurious to the company or a hindrance to the prosecution of its lawful business. It is not an undue application of the maxim of the law commanding one so to use his

3.   own as not to injure another, to hold that the unnecessary exposure of one's property, attractive and alluring to children, but dangerous, at a place, though on his own premises, where the owner so exposing his property knows, or has good reason to believe, that children do or will come for the indulgence of the natural inclination or instinct of young persons to ride upon moving objects, or otherwise to divert themselves in a manner to which such dangerous object is adapted, involves such disregard for the safety of such incompetent persons as to amount to what may be called unlawful allurement, and as to be attributable as an implied invitation, in a case where, but for such incompetency of the injured person, he would be regarded as a trespasser or a mere licensee.

The following from Cooley, Torts (2d ed.), *303, is quoted in *Union Pac. R. Co.* v. *McDonald, supra*: "In the

case of young children and other persons not fully *sui juris* an implied license might sometimes arise when it would not on behalf of others. Thus, leaving a tempting thing for children to play with exposed, where they would be likely to gather for that purpose, may be equivalent to an invitation to them to make use of it."

In 2 Thompson, Negligence (2d ed.), §1827, referring to the subject of injuries to children from unguarded and unfastened railway turntables, it is said: "In view of its great danger to children, so shown by the numerous cases in the law books founded upon injuries of this kind, the just and humane conclusion must be that if the railway company can, at slight expense or inconvenience to itself, keep it guarded from trespassing children or locked so that they cannot use it, it should be held bound to do so, and should stand liable in damages if, in consequence of the failure of this duty, a child of tender years, to whom contributory negligence cannot be imputed, is injured while playing with it. This, on the one hand, allows the railway company the reasonable use of its property, while at the same time it refuses to release it from those obligations of social duty which rest upon all men in a state of civilized society." See, also, 1 Thompson, Negligence (2d ed.), §1036 *et seq.*

The care which it is the duty of the railway company to exercise in such a case is that degree of care which an ordinarily prudent person would, under similar circumstances, use to prevent injury to children. *O'Malley* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 289, 45 N. W. 440. In *Barrett* v. *Southern Pac. Co.* (1891), 91 Cal. 296, 27 Pac. 666, 25 Am. St. 186, an action to recover damages for personal injury to the plaintiff, a boy of eight years of age, sustained while riding on a railway turntable, it was said: "If defendant ought reasonably to have anticipated that [by] leaving this turntable unguarded and exposed, an injury such as plaintiff suffered was likely to

occur, then it must be held to have anticipated it, and was guilty of negligence in thus maintaining it in its exposed position. It is no answer to this to say that the child was a trespasser, and if it had not intermeddled with defendant's property it would not have been hurt, and that the law imposes no duty upon the defendant to make its premises a safe playground for children." The question as to the defendant's negligence was held to be one to be decided by the jury.

In *Alabama, etc., R. Co.* v. *Crocker* (1901), 131 Ala. 584, 31 South. 561, it was said: "It is the apparent probability of danger, rather than the rights of property, that determines the duty and measure of care required of the author of such a contrivance, for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right." In such case, where an object on one's premises has caused injury to another, the question as to the usefulness of the object to the owner, by way of contributing to the full enjoyment of his right of proprietorship, may enter into the consideration of the question of negligence in the maintenance of the object in the condition which occasioned the injury; but, also, it should be considered, in such connection, whether such enjoyment may be had consistently with safety to others, at such slight expense and inconvenience as the due consideration of the known or probable danger to others, under all the circumstances, would suggest to a reasonably prudent person in the use of his own property of the particular kind in question in like situation and condition. See *Koons* v. *St. Louis, etc., R. Co.* (1877), 65 Mo. 592; *Ferguson* v. *Columbus, etc., Railway* (1885), 75 Ga. 637; *Ferguson* v. *Columbus, etc., Railway* (1886), 77 Ga. 102; *Ilwaco R., etc., Co.* v. *Hedrick* (1890), 1 Wash. 446, 25 Pac. 335, 22 Am. St. 169; *Union Pac. R. Co.* v. *Dunden* (1887), 37 Kan. 1, 14 Pac. 501; *Gulf, etc., R. Co.* v. *Styron* (1886),

66 Tex. 421, 1 S. W. 161; *Gulf, etc., R. Co.* v. *McWhirter* (1890), 77 Tex. 356, 14 S. W. 26, 19 Am. St. 755; *Callahan* v. *Eel River, etc., R. Co.* (1891), 92 Cal. 89, 28 Pac. 104; *Keffe* v. *Milwaukee, etc., R. Co.* (1875), 21 Minn. 207, 18 Am. Rep. 393; *Kansas Cent. R. Co.* v. *Fitzsimmons* (1879), 22 Kan. 686, 31 Am. Rep. 203; *Nagel* v. *Missouri Pac. R. Co.* (1882), 75 Mo. 653, 42 Am. Rep. 418; *Evansich* v. *Gulf, etc., R. Co.* (1882), 57 Tex. 126, 44 Am. Rep. 586. The four cases last above cited are also cited in *Indianapolis, etc., R. Co.* v. *Pitzer, supra.* See, also, *Ft. Worth, etc., R. Co.* v. *Robertson* (1891), (Tex.), 16 S. W. 1093, 14 L. R. A. 781; *Edgington* v. *Burlington, etc., R. Co.* (1902), 116 Iowa 410, 90 N. W. 95, 57, L. R. A. 561; *Chicago, etc., R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920; *San Antonio, etc., R. Co.* v. *Skidmore* (1901), 27 Tex. Civ. App. 329, 65 S. W. 215; *City of Pekin* v. *McMahon* (1895), 154 Ill. 141, 39 N. E. 484, 45 Am. St. 114, 27 L. R. A. 206; *Young* v. *Harvey* (1861), 16 Ind. 314; *Graves* v. *Thomas* (1884), 95 Ind. 361, 48 Am. Rep. 727; *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 58 Am. Rep. 65; *Penso* v. *McCormick* (1890), 125 Ind. 116, 9 L. R. A. 313, 21 Am. St. 211; *Cincinnati, etc., Spring Co.* v. *Brown* (1903), 32 Ind. App. 58. Judgment affirmed.